Howard Marc Spector
TBA#00785023
Spector & Cox, PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
hspector@spectorcox.com

ATTORNEY FOR CEASONS HOLDINGS, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 23-41386 |
| **Sidhartha Mukherjee and** | § | |
| **Sunita Mukherjee** | § | |
| | § | Chapter 13 |
| | § | |
| Debtors | § | |

## MOTION TO DISMISS CASE WITH PREJUDICE TO REFILING

**Your rights may be affected by the relief sought in this pleading. You should read this pleading carefully and discuss it with your attorney, if you have one in this bankruptcy case. If you oppose the relief sought by this pleading, you must file a written objection, explaining the factual and/or legal basis for opposing the relief.**

**No hearing will be conducted on this Motion unless a written objection is filed with the Clerk of the United States Bankruptcy Court and served upon the party filing this pleading WITHIN FOURTEEN (14) DAYS FROM THE DATE OF SERVICE shown in the certificate of service unless the Court shortens or extends the time for filing such objection. If no objection is timely served and filed, this pleading shall be deemed to be unopposed, and the Court may enter an order granting the relief sought. If an objection is filed and served in a timely manner, the Court will thereafter set a hearing with appropriate notice. If you fail to appear at the hearing, your objection may be stricken. The Court reserves the right to set a hearing on any matter.**

**TO THE HONORABLE BRENDA T. RHOADES**
**UNITED STATES BANKRUPTCY JUDGE:**

EXHIBIT "2"

COMES NOW, Ceasons Holdings LLC ("**Movant**"), a creditor in the above-styled and numbered case, and files its Motion to Dismiss Case with Prejudice to Refiling (the "**Motion**").  In support thereof, Movant states:

1.      The Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. §§ 157, 1334. The Motion presents a core matter pursuant to 28 U.S.C. § 157(b)(2)(A) & (O).

2.      Movant is the holder of a mortgage on the Debtors' principal residence located at 3905 Kite Meadow Drive, Plano, Texas (the "**Plano Property**").

3.      The Debtors filed for bankruptcy protection on July 31, 2023, presumably to halt the Movant's pending foreclosure on the Plano Property.

4.      On September 14, 2023, Debtors were to appear at the 341 Meeting of Creditors scheduled in the case.  Multiple parties attended, but the Debtors failed to appear.

5.      The Debtors have not made their first plan payment.

6.      The Movant submits that this case has been filed in bad faith, as evidenced by the Debtors' failure to adhere to their statutory requirements to make plan payments and attend their creditors meeting.

7.      Additionally, and further evidencing the Debtors' bad faith, the Debtors have failed to disclose material information required for this Court and the Standing Chapter 13 Trustee to administer the case, to wit:

    a.  On November, 30, 2021, Movant loaned the Debtors $300,000.00 evidenced by a Promissory Note ("**Note**") and Deed of Trust and Security Agreement ("**Deed of Trust**").  Copies of the Note and Deed of Trust are attached hereto as Exhibit 1 and Exhibit 2 respectively.

    b.  The loan from Movant and the Debtor's grant of a security interest to Movant in the Plano Property are not disclosed, as they should be, in response to Question

-2-

No. 18 in the Debtor's Statement of Financial Affairs. Moreover, the contemporaneous payment from Movant's loan funding to discharge the lien of the prior mortgagee, Wildcat Lending Fund One L.P., is also not disclosed as required.

c. The loan from Movant was made based on the Debtors' representation that they did not occupy the Plano Property at the time of the loan, and had elected to designate their homestead at another property they owned – 2705 Holm Drive, Garland, TX (the "**Garland Property**"). See Non-Homestead Affidavit and Designation of Homestead, Exhibit 3.

d. The Debtors' answer to Question 2 of the Statement of Financial Affairs filed in the case does not indicate that the Debtors ever resided at the Garland Property, or anywhere other than the Plano Property, in the last three years.

e. Unbeknownst to Movant, substantially contemporaneously with the closing of Movant's loan, the Debtors sold the Garland Property. See Exhibit 4. The Non-Homestead Affidavit and Designation of Homestead, which Movant was conclusively entitled to rely upon,[1] was thus patently false.

f. The Debtors' answer to Question 18 of the Statement of Financial Affairs fails to reflect the sale of the Garland Property. Moreover, the payment of the mortgage on the Garland Property to the mortgagee at the time of the sale, Wildcat Lending Fund One L.P., is also not disclosed as required.

g. Also in connection with Movant's loan, on or about November 30, 2022, the Debtors and a putative tenant of the Plano Property, Mr. Mody, signed a Subordination, Non-Disturbance and Attornment Agreement stating that the Plano Property was leased to Mr. Mody through June 2022. See Exhibit A to

---

[1] Texas Const. Art. 16, § 50(d).

Exhibit 3.

    h.   The Debtors' answer to Question 4 of the Statement of Financial Affairs filed in the case does not indicate any rent received from Mr. Mody.  This, taken together with the surreptitious sale of the Garland Property and the Debtors' assertion in their Statement of Financial Affairs that they have resided in the Plano Property for all of the last three (3) years, calls into question whether the Subordination, Non-Disturbance and Attornment Agreement was also false.

8.    Compounding the deficiencies in the case is the fact that the Debtors' plan is completely indefensible.  The plan proposes to retain two luxury vehicles valued at almost $80,000 and to reamoritze Movant's debt at less than the contractual interest rate, despite the fact that Movant's loan was procured through fraud.

9.    The Debtors have either falsified their bankruptcy filings, falsified their loan documents with Movant, or both.  They have not made the slightest attempt to meet their administrative obligations or payment obligations in this case.  And their goals in filing this case fly in the face of the Bankruptcy Code's policy to grant a "fresh start [to the] . . . honest but unfortunate debtor." *Grogan v. Garner*, 498 U. S. 279, 286, 287 (1991).  These debtors are neither. Accordingly, Movant requests that the Court dismiss this case with prejudice to refiling for six months.

WHEREFORE PREMISES CONSIDERED, Movant requests that after notice and hearing, the Court dismiss this case with prejudice to refiling for six months and grant all other relief as is just.

Respectfully submitted,

By:      _/s/ Howard Marc Spector_
         Howard Marc Spector
         TBA #00785023

SPECTOR & COX, PLLC
12770 Coit Road, Suite 850
Dallas, Texas 75251
(214) 365-5377
FAX: (214) 237-3380
hspector@spectorcox.com

ATTORNEY FOR MOVANT

# PROMISSORY NOTE

$300,000.00                                                                November 30, 2021.

FOR VALUE RECEIVED after date, without grace, in the manner, on the dates, and in the amounts so stipulated, the undersigned, **Sidhartha Mukherjee**, (hereinafter called "Borrower") promises to pay to the order of **CEASONS HOLDINGS, LLC** (the "Lender") at the Lender's office at 6023 Timber Creek, Dallas, Dallas County, Texas 75248 the sum of Three Hundred Thousand and no/100 Dollars ($300,000.00) in lawful money of the United States of America which shall be legal tender for the payment of all debts or dues, public or private at the time of payment, and pay, in like money, interest on the principal from date hereof until maturity at a fixed rate of twelve percent (12.0%) per annum.

The interest shall be calculated based on a 360-day year consisting of 12 30-day months.

Borrower further promises to pay, in like money, interest on all past due principal and accrued interest from maturity until paid at eighteen per cent (18.0%) per annum.

Interest only in the amount of $3,000.00 shall be due and payable monthly beginning January 1, 2022, and continuing on the same day of each successive calendar month thereafter until November 30, 2022, when all accrued and unpaid interest shall be due and payable..

All principal is due and payable on November 30, 2022.

THIS LOAN IS PAYABLE IN FULL ON NOVEMBER 30, 2022, OR AT SUCH TIME AS THE LENDER ACCELERATES THE NOTE IN ACCORDANCE WITH THE ACCELERATION PROVISION. AT MATURITY OR IF THE LENDER DEMANDS PAYMENT, YOU MUST REPAY THE ENTIRE PRINCIPAL BALANCE OF THE LOAN AND UNPAID INTEREST THEN DUE. THE LENDER IS UNDER NO OBLIGATION TO REFINANCE THE LOAN AT THAT TIME. YOU WILL, THEREFORE, BE REQUIRED TO FIND A LENDER WILLING TO LEND YOU THE MONEY AT PREVAILING MARKET RATES, WHICH MAY BE CONSIDERABLY HIGHER THAN THE INTEREST RATE OF THIS LOAN. IF YOU REFINANCE THIS LOAN AT MATURITY, YOU MAY HAVE TO PAY SOME OR ALL OF THE CLOSING COSTS NORMALLY ASSOCIATED WITH A NEW LOAN EVEN IF YOU OBTAIN REFINANCING FROM THE SAME LENDER.

Lender has advanced the loan proceeds, and the loan terms and conditions have been negotiated, in reliance that the loan would not be prepaid. This Note may **not** be prepaid during the first three (3) months of the term hereof without payment of a prepayment fee equal to the sum of a) that portion, if any, of the origination fee that may have to otherwise be refunded or credited under Texas Finance Code Chapter 305, and b) interest that would have been earned on the principal prepaid for the remainder of the first three (3) months of the term hereof. This prepayment fee shall apply whether the prepayment is made voluntarily by Borrower or involuntarily if the loan is accelerated after default.

It is agreed that time is of the essence of this Agreement. If default is made in the payment of any part of the principal or interest of this Note as same shall become due and payable, or if there is a default in any of the terms, covenants, conditions, agreements, or provisions set forth in any instruments securing payment hereof, or should Borrower file a voluntary petition for bankruptcy or shall be adjudged a bankrupt or insolvent, or shall file any petition or answer seeking for themselves any arrangement, composition,

1

Exhibit 1

readjustment, or similar relief under any present or future Statute, law, or regulation, or shall file any answer admitting the material allegations of the petition filed against Borrower, in any such proceeding or shall seek or consent to or acquiesce in the appointment of any trustee or receiver on all or any substantial part of the properties of Borrower, or if a decree or order by a court having jurisdiction in the premises shall have been entered adjudging Borrower to be bankrupt or insolvent under the federal bankruptcy laws or any applicable laws of the United States of America or any state law, or appointing a receiver or trustee or assignee in bankruptcy or insolvency of Borrower, or its properties, and such decree or order shall have continued undischarged or unstayed for a period of thirty (30) days, or if Borrower shall make an assignment for the benefit of creditors, then in any such event the holder or holder of this Note shall have the option to declare this Note due and payable whereupon the entire unpaid principal balance of this Note and all interest accrued thereon shall thereupon at once mature and become due and payable without presentment, demand, protest, or notice of any kind, all of which are hereby expressly waived by Borrower.

This Note shall be the obligation of Borrower and all endorsers, and shall be binding upon Borrower, its guarantors, successors and assigns. Each Borrower and endorser hereby waives grace, presentment for payment, demand, protest, notice of protest, notice of default, notice of intent to accelerate, notice of acceleration, and any other notice as well as diligence in collecting.

In the event of default hereunder, or in any of the instruments securing payment hereof, and this Note is placed in the hands of an attorney for collection (whether or not suit is filed) or if this Note is collected by suit or legal proceedings through the bankruptcy court or bankruptcy proceedings, Borrower agrees to pay an additional amount of ten percent (10%) of all sums then due and owing hereon, including principal and interest, as attorney's fees and expenses of collection or such greater amount as may be reasonable.

Any check, draft, money order, or other instrument given in payment of all or any portion hereof may be accepted by the holder or holders hereof and handled in the customary manner; but, the same shall not constitute payment hereunder or diminish any rights of holder or holders hereof except to the extent that actual cash proceeds of such instrument are unconditionally received by the holder or holders hereof.

Should Borrower choose to pay this note by check, in the event any check is returned or payment thereof is refused, Borrower agrees to pay Lender a returned check fee in an amount equal to the maximum amount authorized by Texas Finance Code, § 306.006 or its successor statute.

If the Lender has not received the full amount of any monthly payment by the end of ten (10) calendar days after the date it is due, Borrower will pay a late charge to the Lender of five percent (5.0%) of any overdue amount. This is not a grace clause in that Lender may choose to exercise any remedy available to it in the event any payment is not timely made.

Borrower agrees that Lender's failure to exercise any option or election herein upon the occurrence of any event of default shall not be construed as a waiver of the right to exercise such option, or election at any later date or upon the occurrence of a subsequent event of default. Lender may accept partial payments on the Note, either the monthly installments or after maturity, whether by the terms of this Note or upon acceleration, without waiver of the right to demand the remainder of the required payment and without waiver of the right to continue to assert any remedy or enforce the sale provisions of the deed of trust. Every party to this Note expressly waives any right to trial by jury of any suit, action, or cause of action arising under this Note or any other instrument, document, or agreement executed or delivered in

2

connection herewith, or in any way connected with or related or incidental to the dealings of the parties hereto with respect to this Note. Each party consents that any such suit or cause of action shall be decided by the court without the aid of a jury and that any party to this Note may file this Note or a certified copy of this Note with any court as conclusive evidence of the consent of the parties hereto to the waiver of their right to trial by jury.

It is the intention of the parties hereto to comply with the usury laws of the State of Texas. Accordingly, in no event shall this Note or such documents be construed to contract for, charge, or permit a receipt of interest in excess of the maximum amount permitted by the laws of the State of Texas and/or of the United States of America. Except as set forth in the paragraph hereinabove regarding prepayment of this Note, if any such excess of interest is contracted for, charged, or received under this Note or under any other loan document, or in the event this Note is accelerated in whole or in part, or if all or part of the principal or interest of this Note shall be prepaid, so that the amount of interest contracted for, charged, or received under this Note or other loan documents on the principal actually outstanding from time to time under this Note shall exceed the maximum rate of interest permitted by law; then, in such event a) the provisions of this paragraph shall govern and control; and b) neither Borrower hereof nor Borrower's successors or assigns, or any other party liable for the payment hereof shall be obligated to pay the amount of such interest to the extent that it is in excess of the maximum permitted by law; and c) any such excess shall be deemed a mistake and canceled automatically, and, if theretofore paid, shall, at the option of the holder of this Note, be refunded to Borrower or applied as a credit against the then unpaid principal amount hereof; and d) the effective rate of interest shall be automatically reduced to the maximum rate of interest permitted by law. The "weekly ceiling" defined in Chapter 303 of the Texas Finance Code is the applicable maximum rate of interest permitted by law; provided that, if any applicable law permits greater interest, the law permitting the greatest interest shall apply. Determination of the rate of interest shall be made by amortizing, prorating, allocating, and spreading in equal parts during the period of the fully stated term of the loan evidenced hereby all interest at any time contracted for, charged, or received from Borrower in connection with this loan.

Payment of this Note is secured by a Deed of Trust of even date herewith executed by the undersigned and spouse to John Davenport, Trustee, for the benefit of Lender covering the property particularly described therein located at 3905 Kite Meadow Dr., Plano, Texas.

Sidhartha Mukherjee
2705 Holm Drive
Garland, Texas 75041

3

NOTICE OF CONFIDENTIALITY RIGHTS: IF YOU ARE A NATURAL PERSON,
YOU MAY REMOVE OR STRIKE ANY OF THE FOLLOWING INFORMATION
FROM ANYINSTRUMENT THAT TRANSFERS AN INTEREST IN REAL
PROPERTY BEFORE ITIS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR
SOCIAL SECURITYNUMBER OR YOUR DRIVER'S LICENSE NUMBER

## DEED OF TRUST and SECURITY AGREEMENT

Date:    November 30, 2021

Grantor:                         Sidhartha Mukherjee and Sunita Mukherjee, husband and wife

Grantor's Mailing Address:       2705 Holm Drive 75041
                                 Garland, Texas

Trustee:                         John Davenport

Trustee's Mailing Address:       6023 Timber Creek
                                 Dallas, Texas 75248

Lender:                          CEASONS HOLDINGS, LLC

Lender's Mailing Address:        6023 Timber Creek
                                 Dallas, Texas 75248

Obligation:

    Note:

        Date: even date herewith

        Original principal amount: $300,000.00

        Borrower: Sidhartha Mukherjee

        Lender:  CEASONS HOLDINGS, LLC

        Maturity Date: November 30, 2022

        Other Debt: This conveyance is also made in trust to secure payment of all other
present and future debts that Grantor may owe to Lender, regardless of how the other debt
is incurred or evidenced. This conveyance is also made to secure payment of any renewal
or extension of any present or future debt that Grantor owes Lender, including any loans

1

Exhibit 2

and advancements from Lender to Grantor under the provisions of this deed of trust. When Grantor repays all debts owed to Lender, this deed of trust lien will terminate only if Lender releases this deed of trust at the request of Grantor. Until Lender releases it, this deed of trust will remain fully in effect to secure future advances and debts, regardless of any renewals, extensions, or partial releases.

Property (including any improvements):

> Lot 13, in Block C, of Stoney Hollow, Phase Three, an addition to the City of Plano, Collin County, Texas, according to the Plat thereof recorded in Cabinet K, at Pages 651, 652, of the Plat Records of Collin County, Texas located at 3905 Kite Meadow Dr., Plano, Texas

together with: (i) all buildings, structures and other improvements now or hereafter situated on the foregoing described real property, (ii) all fixtures, equipment, apparatus, appliances, furniture, furnishings and other items now or hereafter attached to, installed in or used in connection with the foregoing described real property or improvements or buildings thereon including but not limited to any and all partitions, ducts, shafts, pipes, radiators, conduits, wiring, window screens and shades, drapes, rugs and other floor coverings, motors, engines, boilers, stockers, pumps, dynamos, transformers, generators, fans, blowers, vents, switchboards, compressors, furnaces, cleaning systems, call and sprinkler systems, fire extinguishing apparatus, water system, sewage disposal system, heating, plumbing, laundry, incinerating, air conditioning and air cooling systems, water, gas and electric equipment, and building materials, supplies and construction equipment of all of kinds, all of which property and things are hereby declared to be permanent accessions to the foregoing described real property, (iii) all rights, titles and interests now owned or hereafter acquired by Grantor in and to all easements, streets, roads, highways, and rights-of-way adjacent or contiguous to the foregoing described real property, (iv) all tracts or parcels of land and any interests therein presently owned by Grantor and contiguous to the foregoing described real property, (v) any strips or gores between the Land and abutting or adjacent properties; (vi) all water and water rights, timber, crops and mineral interests; and (vii) all rights, titles, interests, leases, privileges, hereditaments, appurtenances, estates, reversions and remainders owned or to be owned by Grantor in and to all or any portion of the foregoing described properties (all of the aforesaid being hereinafter sometimes called the "Property").

Prior Lien(s) (including recording information): None.

Other Exceptions to Conveyance and Warranty: as set forth in Lender's title policy covering the Property and the loan.

For value received and to secure payment of the Obligation, Grantor owns the Property, Grantor conveys the Property to Trustee in trust. Grantor warrants and agrees to defend the title to the Property, subject to the Other Exceptions to Conveyance and Warranty. On payment of the Obligation and all other amounts secured by this deed of trust, this deed of trust will have no further effect, and Lender will release it at Grantor's expense.

In addition to creating a deed-of-trust lien on all the real and other property described above, Grantor also grants to Lender a security interest in all of the above-described personal property pursuant to and to the extent permitted by the Texas Uniform Commercial Code.

2

**Clauses and Covenants**

**A.** **Grantor's Obligations**

Grantor agrees to—

1.    keep the Property in good repair and condition;

2.    pay all taxes and assessments on the Property before delinquency and furnish Lender paid tax receipts for all such taxes and assessment. Grantor shall not borrow money to pay ad valorem taxes without Lender's prior written consent. If all taxes are not timely paid by Grantor, Lender may, but shall not be obligated to, pay such taxes and Grantor shall, by affidavit or other instrument in form approved by Lender, authorize each tax assessor collector to transfer the lien securing payment of such taxes to Lender. In the event Grantor fails to execute such affidavit or other instrument within three (3) days from request by Lender to do so, Lender may sign the affidavit on behalf of Grantor - and for such limited purpose, Grantor appoints Lender its agent and attorney in fact coupled with the interest of this deed of trust.At Lender's request, Grantor shall pay Lender, on the same day monthly installments of principal and interest are payable under the Note, until the Note is paid in full, a sum (herein "Funds") equal to one-twelfth (1/12th) of the yearly taxes and assessments which may attain priority under this Deed of Trust and one-twelfth (1/12th) of the yearly premiums for insurance as reasonably estimated initially and from time to time by Lender on the basis of assessments and reasonable estimates thereof. The Funds shall be managed by Lender or its designee and shall be held in an institution, the deposits or accounts of which are insured or guaranteed by a Federal or state agency. Lender shall apply the Funds to pay said taxes, assessments, and insurance. Lender may not charge for so holding and applying the Funds, analyzing said account or verifying and compiling said assessments and bills, unless Lender pays Grantor's interest on the Funds and applicable law permits Lender to make such a charge. Unless applicable law requires such interest to be paid, Lender shall not be required to pay Grantor any interest or earnings on the Funds. Lender shall provide Grantor, without charge, an annual accounting of the Funds showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for the sums secured by this Deed of Trust. If the initial amount of the Funds held by Lender, together with the future monthly installments of Funds payable prior to the due dates of taxes, assessments, and insurance premiums shall exceed the amount required to pay same as they fall due, such excess shall be, at Grantor's' option; either promptly repaid to Grantor or credited to Grantor's monthly installments of Funds. If the amount of the Funds held by Lender shall not be sufficient to pay taxes, assessments or insurance as they fall due, Grantor shall pay to Lender any amount necessary to make up the deficiency within thirty (30) days from the date notice is mailed by Lender to Grantor requesting payment thereof. Upon payment in full of all sums secured by this Deed of Trust, Lender shall promptly refund to Grantor any Funds held by Lender. If the Property is sold or the Property is otherwise acquired by Lender, it shall apply, no later than immediately prior to the sale of the Property or its acquisition by Lender, any Funds held by Lender at the time of application as a credit against the sums secured by this Deed of Trust. If Lender does not require a tax escrow and Grantor fails to pay any taxes as and when due, or if Grantor fails to make escrow payments sufficient to pay all taxes, assessments and insurance premiums timely,

3

Lender may, but shall not be obligated to, pay same. If payment of taxes is made by Lender, Grantor shall, by affidavit or other instrument in form approved by Lender, authorize each tax assessor collector to transfer the lien securing payment of such taxes to Lender. Grantor shall, immediately upon receipt, forward to Lender copies of all notices, appraisals and valuation determination, or other information regarding ad valorem taxes applicable to the Property received by Grantor. Grantor agrees to file and prosecute in good faith a protest or appeal of valuation or status of the property if requested to do so by Lender.

3.       defend title to the Property subject to the Other Exceptions to Conveyance and Warranty and preserve the lien's priority as it is established in this deed of trust;

4.       maintain all insurance coverage with respect to the Property, revenues generated by the Property, and operations on the Property that Lender reasonably requires including without limitation damage or loss by fire, hazards included within the meaning of the term "extended coverage," wind or windstorm, earthquakes and floods in the amounts required by Lender but no less than the amount of your indebtedness to the Lender ("Required Insurance Coverage") issued by insurers authorized to do business in Texas or an eligible surplus lines carrier and written on policy forms acceptable to Lender that includes naming Lender as the person to be paid under the policy in the event of a loss, and deliver evidence of the Required Insurance Coverage in a form acceptable to Lender at least ten days before the expiration of the Required Insurance Coverage. If Grantor fails to meet these requirements, Lender may, but is not obligated to, obtain collateral protection insurance on behalf of Grantor (or for Lender's protection only) at Grantor's expense;

5.       obey all laws, ordinances, and restrictive covenants applicable to the Property;

6.       keep any buildings occupied as required by the Required Insurance Coverages; and

7.       if the lien of this deed of trust is not a first lien, pay or cause to be paid all prior lien notes and abide by or cause to be abided by all lien instruments;

8.       notify Lender of any change of address, condemnation proceeding, or other action affecting title to the Property.

9.       furnish, from time to time, to the Lender promptly upon request, but in any event, no later than April 1 of each year during the term of the note, the personal financial statement of Grantor, sworn to by Grantor, and in such form as Lender may require. Such financial statements shall include an adequately detailed current statement of assets, liabilities and net worth and current income statements in such detail as the Lender may reasonably request, all to conform to generally accepted or recognized accounting principles consistently applied.

10.      Grantor shall not commercially cut timber on the property without the prior written consent of Lender. Grantor shall not commit or permit waste, impairment, or deterioration of or to the Property. Grantor will not, without first obtaining the written consent of Lender, permit any exploration, drilling, or extraction, removal, or production of any minerals from the Property.

11.      Grantor shall promptly cure, and ratify the cure of, any defects in the creation, issuance, delivery, and recording of the Note, Deed of Trust, and any other loan document. Grantor will, at

4

its expense, execute (or cause to be executed) and deliver to Lender upon request all such other and further documents, agreements, and instruments in compliance with or accomplishment of the covenants and agreements of Grantor in the Note, Deed of Trust or other loan document, or to evidence further and describe more fully any collateral intended as security for the loan, or to correct any omissions in the Note, Deed of Trust or other loan document, or to state more fully the obligations and agreements set out in the Note, Deed of Trust or other loan document, or to make any recordings, to file any notices, or to obtain any consents, all as may be reasonably necessary or appropriate in connection with the loan.

12.      Grantor shall <u>not</u> seek, agree to, or make any change in the use of the Property or its zoning classification without Lender's written agreement.

13.      So long as any part of the Indebtedness remains unpaid, no construction shall be commenced nor improvements made upon the Property unless the plans and specifications for such construction or improvements have been submitted to and approved in writing by Lender. Lender shall not unreasonably withhold approval; provided that Lender is entitled to receive such assurances, agreements and subordinations by Grantor and the contractor(s) involved as Lender may request to the end that the Property will not be subject to any lien claim that is superior to Lender's lien(s) on the Property.

14.      Grantor shall furnish Lender true and complete copies of any and all existing leases, extensions of existing leases, and new leases covering the Property or any part or portion thereof immediately upon the effective date thereof.

15.      If Grantor fails to perform any of Grantor's obligations, Lender may, but is not obligated to, perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including without limitation attorneys fees and interest on those amounts from the date of Lender's payment at the default rate stated in the Note; and such amounts will be secured by this Deed of Trust.

**B.      Lender's Rights**

1.      Lender or Lender's mortgage servicer may appoint in writing one or more substitute trustees, succeeding to all rights and responsibilities of Trustee. Any such appointment shall be presumed to have been executed with appropriate authority.

2.      If the proceeds of the Note are used to pay a debt or ad valorem taxes secured by superior liens, Lender is subrogated to and entitled to exercise any and all the rights, remedies and liens of the holder of the debt or the taxing units so paid.

3.      Lender may apply any proceeds received under the property insurance policies covering the Property either to reduce the Obligation or to repair or replace damaged or destroyed improvements covered by the policy.

4.      Notwithstanding note terms to the contrary, and unless applicable law prohibits, all payments received by Lender from Grantor with respect to the Obligation or this deed of trust may, at Lender's discretion, be applied first to amounts payable under this deed of trust and then to

amounts due and payable to Lender with respect to the Obligation, to be applied to late charges, principal, or interest in the order Lender in its discretion determines.

5.      If Grantor fails to perform any of Grantor's obligations, Lender may perform those obligations and be reimbursed by Grantor on demand for any amounts so paid, including attorney's fees, plus interest on those amounts from the dates of payment at the rate stated in the Note for matured, unpaid amounts. The amount to be reimbursed will be secured by this deed of trust.

6.      If there is a default on the Obligation or if Grantor fails to perform any of Grantor's obligations, Lender may—

        a. declare the unpaid principal balance and earned interest on the Obligation immediately due;

        b. direct Trustee to foreclose this lien and security interest, in which case Lender or Lender's agent will cause notice of the foreclosure sale to be given as provided by the Texas Property Code and the Uniform Commercial Code as enacted in Texas, then in effect or institute suit to foreclose; and

        c. purchase the Property at any foreclosure sale by offering the highest bid and then have the bid credited on the Obligation.

        d. Grantor acknowledges that the provisions of this Section 6 could result in foreclosure or institution of a suit to foreclose.

7.      Lender may remedy any default without waiving it and may waive any default without waiving any prior or subsequent default.

8.      The term "Lender" includes the Lender named on the first page of this instrument and to its successors and assigns. The Obligation may be owned by more than one person or entity. Grantor acknowledges that Lender may assign portions of the Obligation or sell participations in the Obligation. Grantor consents to such assignments and/or participations and further consents that the owners of and/or participants in the Obligation may, by agreement or by appointment of power of attorney or both, designate a lead lender who may, on behalf of all owners and/or participants, fully administer the Obligation, including, without limitation, appointing substitute trustee(s), declaring and acting on defaults in payment or performance of the Obligation, modifying the terms of the Obligation, and directing the trustee or substitute trustee to act. Unless Grantor is otherwise informed in writing, the lead lender shall be Lender heretofore identified.

9.      Lender shall be entitled to apply for and obtain the appointment of a receiver, trustee, liquidator, or conservator of the Property, without notice to Grantor and without regard to the adequacy of any security for the Obligation and without regard for the solvency of Grantor, any guarantor or other person or entity liable for the payment of the Obligation.

10.     Grantor shall allow Lender or Lender's agents entry on the Property at reasonable times and inspect it and the personal property in which Lender has a security interest.

6

11.    Grantor and Lender may agree to modify, extend, and/or renew the Note and this Deed of Trust for any reason without notice to or consent by any third party and without such modification, renewal or extension being subject to any "reasonableness" standard. .

**C.    Trustee's Rights and Duties**

If directed by Lender to foreclose this lien, Trustee will —

1.    either personally or by agent give notice of the foreclosure sale as required by the Texas Property Code as then in effect;

2.    sell and convey all or part of the Property "AS IS" to the highest bidder for cash with a general warranty binding Grantor, subject to the Prior Lien and to the Other Exceptions to Conveyance and Warranty and without representation or warranty, express or implied, by Trustee;

3.    from the proceeds of the sale, pay, in this order—

      a. expenses of foreclosure, including a reasonable fee or commission to Trustee;

      b. to Lender, the full amount of principal, interest, attorney's fees, and other charges due and unpaid;

      c. any amounts required by law to be paid before payment to Grantor; and

      d. to Grantor, any balance; and

4.    be indemnified by Lender against all costs, expenses, and liabilities incurred by Trustee for acting in the execution or enforcement of the trust created by this deed of trust, which includes all court and other costs, including attorney's fees, incurred by Trustee in defense of any action or proceeding taken against Trustee in that capacity. The Trustee shall not incur any personal liability hereunder except for his own gross negligence or willful misconduct; and the Trustee shall have the right to rely on any instrument, document or signature authorizing or supporting any action taken or proposed to be taken by him hereunder, believed by him in good faith to be genuine.

**D.    General Provisions**

1.    If any of the Property is sold under this deed of trust, Grantor must immediately surrender possession to the purchaser. If Grantor fails to do so, Grantor will become a tenant at sufferance of the purchaser, subject to an action for forcible detainer.

2.    Recitals in any trustee's deed conveying the Property will be presumed to be true.

3.    Proceeding under this deed of trust, filing suit for foreclosure, or pursuing any other remedy will not constitute an election of remedies.

4.    This lien will remain superior to liens later created even if the time of payment of all or part of the Obligation is extended or part of the Property is released.

7

5.    Grantor shall send Lender any information on the Property received by Grantor from the County Appraisal District, including without limitation, all notices of appraised value of the Property. At Lender's request, Borrower shall file a notice of protest of such appraised value and diligently pursue such protest at least through the appraisal review board hearing stage. Should Grantor fail to perform the obligations herein stated, Lender may, but is not obligated to file a protest and pursue it with the proper authorities; and, Grantor shall pay Lender all costs and expenses incurred by Lender in doing so, at Lender's request.

6.    Grantor assigns to Lender all amounts payable to or received by Grantor from condemnation of all or part of the Property, from private sale in lieu of condemnation, and from damages caused by public works or construction on or near the Property. After deducting any expenses incurred, including attorney's fees and court and other costs, Lender will either release any remaining amounts to Grantor or apply such amounts to reduce the Obligation. Lender will not be liable for failure to collect or to exercise diligence in collecting any such amounts. Grantor will immediately give Lender notice of any actual or threatened proceedings for condemnation of all or part of the Property.

7.    Interest on the debt secured by this deed of trust will not exceed the maximum amount of nonusurious interest that may be contracted for, taken, reserved, charged, or received under law. Any interest in excess of that maximum amount will be credited on the principal of the debt or, if that has been paid, refunded. On any acceleration or required or permitted prepayment, any such excess will be canceled automatically as of the acceleration or prepayment or, if already paid, credited on the principal of the debt or, if the principal of the debt has been paid, refunded. This provision overrides any conflicting provisions in this and all other instruments concerning the debt. Borrower agrees that as a condition to any claim seeking usury penalties against Lender, Borrower will provide written notice to Lender advising Lender in reasonable detail of the nature and amount of the violation, and Lender will have sixty calendar days after receipt of such notice in which to correct such usury violation, if any, by either refunding such excess interest to Borrower or crediting such excess interest against the Obligation, as provided above, or to any other indebtedness then owing to Lender by Borrower.

8.    In no event may this deed of trust secure payment of any debt that may not lawfully be secured by a lien on real estate or create a lien otherwise prohibited by law.

9.    When the context requires, singular nouns and pronouns include the plural.

10.    The term *Note* includes all extensions, modifications, and renewals of the Note and all amounts secured by this deed of trust.

11.    This deed of trust binds, benefits, and may be enforced by the successors in interest of all parties.

12.    If Grantor and Borrower are not the same person, the term *Grantor* includes Borrower.

13.    **Grantor and each surety, endorser, and guarantor of the Note waive the requirement of notice of default or demand for payment, presentation for payment, notice of intention to**

8

accelerate maturity, notice of acceleration of maturity, protest, and notice of protest, to the extent permitted by law.

14.     Every party to this Deed of Trust expressly waives any right to trial by jury of any suit, action, or cause of action arising under this Deed of Trust or any other instrument, document, or agreement executed or delivered in connection herewith, or in any way connected with or related or incidental to the dealings of the parties hereto with respect to this Deed of Trust. Each party consents that any such suit or cause of action shall be decided by the court without the aid of a jury and that any party to this Deed of Trust may file this Deed of Trust or a certified copy of this Deed of Trust with any court as conclusive evidence of the consent of the parties hereto to the waiver of their right to trial by jury.

15.     To the maximum extent permitted by applicable law, **Grantor waives all rights, remedies, claims and defenses based on or related to Sections 51.003, 51.004, and 51.005 of the Texas Property Code**, to the extent the same pertain or may pertain to this Deed of Trust or suit for deficiency after enforcement hereof.

16.     Grantor agrees to pay reasonable attorney's fees, trustee's fees, and court and other costs of enforcing Lender's rights under this deed of trust if this deed of trust is placed in the hands of an attorney for enforcement.

17.     If any portion of the Note cannot be lawfully secured by this deed of trust, payments shall be applied first to discharge that portion.

18.     The term Lender includes any mortgage servicer for Lender.

19. If default be made in the payment of any part of the Indebtedness, such as an installment of the Note or advancements made under the terms of this Deed of Trust, Lender shall have the option to proceed with foreclosure of the Property, or any part or portion thereof, to satisfy the payment of such installment(s) or other items only, without accelerating the maturity of the entire debt. Lender may foreclose either through the courts or by directing the Trustee or her successor or substitute in trust to proceed as authorized in this Deed of Trust conducting the sale as otherwise herein provided but without declaring the whole Indebtedness due. Any such installment foreclosure sale shall be made subject to the unmatured part of the Indebtedness and any other obligations secured by this Deed of Trust. It is agreed that any such installment foreclosure shall not in any manner affect the unmatured part of the Indebtedness secured by this Deed of Trust; but, as to such unmatured part of said indebtedness and obligations, this Deed of Trust shall thereafter remain in full force and effect as a good and valid lien on the Property just as though no sale had been made as authorized by the provisions of this section. Should Lender purchase at such a sale, the title so acquired shall not merge with the liens and security interests held by Lender except by the express written election to the contrary by Lender. It is further agreed that several sales may be made under this section of this Deed of Trust without exhausting the right or power of sale for any unmatured part of the Indebtedness.

20.     The Trustee may sell the Property in whole or in part and in such parcels and order as the Lender or Trustee may determine. The right of sale hereunder shall not be exhausted by one sale; but rather, successive sales may be made until all of the Property has been sold. If any sale made

9

hereunder is not completed or is defective in the opinion of Lender, such sale shall not exhaust the power of sale hereunder, and Lender or Trustee shall have the right to vitiate said sale and cause a subsequent sale or sales to be made by the Trustee. In the event of a foreclosure sale under this deed of trust, Grantor agrees that all of the Property may be sold as a whole at Lender's option and that the Property need not be present at the sale.

21. Grantor further covenants and agrees (which covenants and agreements shall survive any foreclosure or deed in lieu of foreclosure, of the Property and any satisfaction of the Indebtedness) that:

a. Grantor has no knowledge of (i) the presence of any "Hazardous Substances" (as defined below) on or about the Property or (ii) any spills, releases, discharges or disposal of Hazardous Substances that have occurred or are presently occurring on or onto the Property or any "Other Property" (as defined below).

b. In connection with the construction on or operation and use of the Property, Grantor has no knowledge of any failure to comply with all applicable local, state, and federal environmental laws regulations, ordinances and administrative and judicial orders relating to the generation, recycling, return, sale, storage handling, transport and disposal of any Hazardous Substances.

c. Grantor has given no release or waiver of liability that would waive or impair any claim based on Hazardous Substances to a previous owner of the Property or to any party who may be potentially responsible for the presence of Hazardous Substances to any party.

d. Grantor agrees to immediately notify Lender if Borrower becomes aware of (i) any Hazardous Substances or other environmental problem or liability to the Property or any Other Property or (ii) any lien, action or notice resulting from violation of any laws, regulations, ordinances or orders affecting the Property. At its own cost, Borrower will take all actions which are necessary or desirable to clean up any Hazardous Substances affecting the Property, including removal, containment or any other remedial action required by applicable governmental authorities.

e. Grantor will indemnify and hold Lender harmless from and against any and all claims, demands, damages, losses, liens, liabilities, penalties, fines, lawsuits and disbursements which accrue as to or are incurred by Lender on or after transfer of the Property pursuant to foreclosure proceedings or in lieu thereof and on after the indebtedness is fully paid and arises directly from or out of, or in any way in connection with (i) the inaccuracy of the certification contained herein, (ii) any activities on the Property which directly or indirectly results in the Property or any Other Property becoming contaminated with Hazardous Substances, (iii) the discovery of Hazardous Substances on the Property, and (iv) the clean-up after such a transfer of Hazardous Substances from the Property or any Other Property. Grantor acknowledges that it will be solely responsible for all costs and expenses relating to the clean-up of Hazardous Substances from the Property or any Other Property.

f. As used herein, "Hazardous Substances" shall mean: any substance or material defined or designated as hazardous or toxic waste, hazardous or toxic material, a hazardous, toxic

10

or radioactive substance, or other similar term by any federal, state, or local environmental and /or health statute, regulation or ordinance presently in effect or that may be promulgated in the future as such statutes, regulations and ordinances may be amended from time to time, including but not limited to: Federal Resources Conservation and Recovery Act of 1986, 42 U.S.C. 6901 et seq.; Federal Comprehensive Environmental Response, Compensation, and Liability Act of 1990, 41 U.S.C. 9601 et seq.; Federal Clean Air Act, 42 U.S.C. Sections 7401-7626; Federal Water Pollution Control Act, Federal Clean Water Act of 1987, 33 U.S.C. 1257 et seq.; Federal Insecticide, Fungicide, Rodenticide Act, Federal Pesticide Act of 1988, 7 U.S.C Paragraph 13 et seq; Federal Toxic Substance Control Act, 15 U.S.C. 2601 et seq; Federal Safe Drinking Water Act, 42 U.S.C. 300(f) et seq; Federal Solid Waste Disposal Act, 42 U.S.C. 6921 et seq; Texas Water Code; Texas Clean Air Act, Texas Revised Civil Statutes Annotated Article 4477-5 (Vernon 1986 and Supp. 1989); Texas Solid Waste Disposal Act, Texas Revised Civil Statutes Annotated Article 4477-7 (Vernon 1986 and Supp. 1989); Texas Low-Level Radioactive Waste Disposal Authority Act, Texas Revised Civil Statutes f-1 (Vernon 1986 and Supp. 1989);

As used in this Deed of Trust, "Other Property" means any property which becomes contaminated with Hazardous Substances as a result of construction, operations or other activities on, or the contamination of, the Property.

22.     Grantor may not sell, transfer, or otherwise dispose of any Property, whether voluntarily or by operation of law, without the prior written consent of Lender. If granted, consent may be conditioned upon (a) the grantee's integrity, reputation, character, creditworthiness, and management ability being satisfactory to Lender; and (b) the grantee's executing, before such sale, transfer, or other disposition, a written assumption agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

Grantor shall not cause or permit the Property, nor any part thereof to be encumbered by any liens, security interests, or encumbrances other than the liens securing the Obligation without the prior written consent of Lender. If granted, consent may be conditioned upon Grantor's executing, before granting such lien, a written modification agreement containing any terms Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, an approval fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation.

In addition, if granted, consent may be conditioned upon the consented lien containing express covenants to the effect that (a) the consented lien instrument is unconditionally subordinate to this deed of trust; (b) if any action is instituted to foreclose or otherwise enforce the consented lien instrument , no action may be taken that would terminate any occupancy or tenancy without the prior written consent of Lender, and that consent, if granted, may be conditioned in any manner Lender determines; (c) rents, if collected by or for the holder of the consented lien instrument, will be applied first to the payment of the Obligation then due and to expenses incurred in the ownership, operation, and maintenance of the Property in any order Lender may determine, before being applied to any indebtedness secured by the consented lien instrument; (d) written notice of default under the consented lien instrument and written notice of the commencement of any action to

11

foreclose or otherwise enforce the consented lien instrument must be given to Lender concurrently with or immediately after the occurrence of any such default or commencement; and (e) in the event of the bankruptcy of Grantor, all amounts due on or with respect to the Obligation and this deed of trust will be payable in full before any payments on the indebtedness secured by the consented lien instrument.

Grantor may not cause or permit any of the following events to occur without the prior written consent of Lender: if Grantor is (a) a corporation, the dissolution of the corporation or the sale, pledge, encumbrance, or assignment of any shares of its stock; (b) a limited liability company, the dissolution of the company or the sale, pledge, encumbrance, or assignment of any of its membership interests; (c) a general partnership or joint venture, the dissolution of the partnership or venture or the sale, pledge, encumbrance, or assignment of any of its partnership or joint venture interests, or the withdrawal from or admission into it of any general partner or joint venturer; or (d) a limited partnership, (1) the dissolution of the partnership, (2) the sale, pledge, encumbrance, or assignment of any of its general partnership interests, or the withdrawal from or admission into it of any general partner, (3) the sale, pledge, encumbrance, or assignment of a controlling portion of its limited partnership interests, or (4) the withdrawal from or admission into it of any controlling limited partner or partners. If granted, consent may be conditioned upon (a) the integrity, reputation, character, creditworthiness, and management ability of the person succeeding to the ownership interest in Grantor (or security interest in such ownership) being satisfactory to Lender; and (b) the execution, before such event, by the person succeeding to the interest of Grantor in the Property or ownership interest in Grantor (or security interest in such ownership) of a written modification or assumption agreement containing such terms as Lender may require, such as a principal pay down on the Obligation, an increase in the rate of interest payable with respect to the Obligation, a transfer fee, or any other modification of the Note, this deed of trust, or any other instruments evidencing or securing the Obligation. Failure on the part of Lender to exercise said option to accelerate shall never in any event be interpreted as a release of liability of the original Borrower of said note or any other person liable thereon.

Included in the restriction aforesaid, but not in limitation thereof, Grantor shall neither enter into any mineral lease or conveyance nor drill or explore for, or extract, removal or produce minerals from the surface or subsurface of the Property or affecting the Property or any part or portion thereof without the prior written consent of Lender. Lender's consent may be conditioned upon Grantor and any proposed mineral lessee executing, in form and content acceptable to Lender, a subordination of said lease or other conveyance or like instrument to the lien of this Deed of Trust. In addition, Grantor shall execute and deliver to Lender such other security agreements, instruments, or similar documents which, in Lender's reasonable discretion, is necessary or appropriate to secure Lender. The term "minerals" includes, without limitation, oil, gas, casing head gas, coal, lignite, hydrocarbons, methane, carbon dioxide, helium, uranium, sand and gravel and all other natural elements, compounds, and substances.

23.     No waiver by Lender of any default by Grantor or breach of any of the provisions of this Deed of Trust shall be considered a waiver of any other default or breach, and no delay or omission in exercising or enforcing the rights and powers herein granted shall be construed as a waiver of such rights and powers, and likewise no exercise or enforcement of any rights or power hereunder shall be held to exhaust such rights and powers, and every such right and power may be exercised from time to time.

24.     deleted

25.     This Deed of Trust creates an assignment of rents arising from the Property pursuant to Chapter 64 of the Texas Property Code. Grantor may not lease the Property or any portion, on terms other than at market rents and utilizing lease forms approved by Grantor, thereof without Lender's prior written approval. Grantor agrees to provide Lender, upon request, copies of all leases and rent roll reports affecting the Property. Grantor may not, without Lender's written consent, request or receive rent from any tenant of the property for more than one month in advance.

26.     This instrument is intended to also function as a security agreement pursuant to and in accordance with the Uniform Commercial Code as enacted in the state of Texas.

27.     This instrument is also intended to serve as a Financing Statement under the Uniform Commercial Code between the Debtor/Grantor whose address is hereinabove set out, and the Secured Party/Lender, whose address is hereinabove set out. Debtor grants permission to Lender to file other financing statements to perfect Lender's security interest.

28.     At all times throughout the term of the loan, Grantor and all of its respective Affiliates (defined below) shall (i) not be a Prohibited Person (defined below), and (ii) be in full compliance with all applicable orders, rules, regulations and recommendations of the Office of Foreign Assets Control ("OFAC") of the U. S. Department of the Treasury. The term "Prohibited Persons" shall mean any person or entity a) listed in the Annex to, or otherwise subject to the provisions of, Executive Order No. 13224 on Terrorist Financing, effective September 24, 2001, and relating to Blocking Property and Prohibiting Transactions with Persons Who Commit, Threaten to Commit, or Support Terrorism (the "Executive Order");b) that is owned or controlled by, or acting for or on behalf of, any person or entity that is listed in the Annex to, or is otherwise subject to the provisions of, the Executive Order; c) with whom Lender is prohibited from dealing or otherwise engaging in any transaction by any terrorism or money laundering law, including the Executive Order; d) who commits, threatens or conspires to commit or supports "terrorism" as defined in the Executive Order; e) that is named as a "specially designated national and blocked person" on the most current list published by OFAC at its website, www.ustreas.gov/offices/enforcement/ofac or at any replacement website or other replacement or supplemental official publication of such list; or f) who is an Affiliate of or affiliated with a person or entity listed above. The term "Affiliate" as used herein shall mean, as to any person or entity, any other person or entity that, directly or indirectly, is in control of, is controlled by, or is under common control with such person or entity, or is a director or officer of such person or entity or of an Affiliate of such person or entity. As used herein, the term "control"-means the possession, directly or indirectly, of the power to direct or cause the direction of management, policies or activities of a person or entity, whether through ownership or voting securities or interest, by contract or otherwise.

29.     Grantor acknowledges and agrees that Lender may collaterally assign this Deed of Trust and the Note secured hereby. Grantor shall execute and deliver to Lender and the collateral assignee its estoppel certificate certifying that copies of the executed loan documents are true and correct; that the loan documents have not been modified (or stating such modifications); that Grantor has no claims, setoffs, or defenses to payment of the Note or against Grantor (or stating any such claims); whether a default exists under the terms of the Note and Deed of Trust and the amounts

13

due and owing on the Note and held in escrow. Failure by Grantor to deliver the signed estoppel certificate within five days from Lender's request that Grantor do so shall be a material default hereunder.

30.     Grantor shall not engage in business other than owning and operating the Property; acquire or own material assets other than the Property and such personal property as is reasonable and necessary in the management and operation of the Property; or fail to hold itself out to the public as a legal entity separate from all others and its owners or conduct business in any name other than that set forth in the signature line hereof.

31.     The monies advanced as evidenced by the note hereby secured were used, in part, to pay the amounts remaining due on prior indebtedness as follows: Note dated March 17, 2020, in the amount of $255,500.00 executed by Grantor to Wildcat Lending Find One, LP secured by a deed of trust of even date recorded under Clerk's File No. 2020032300041192 of the Real Property records of Collin County, Texas.. Grantor acknowledges and agrees that Lender is subrogated to all rights of said liens as if renewed and extended even though the prior lien is released and not assigned to Lender.

Executed November 30, 2021.

Sidhartha Mukherjee
_____
Sidhartha Mukherjee

_____
Sunita Mukherjee

THE STATE OF TEXAS              §

COUNTY OF COLLIN               §

This instrument was acknowledged before me on November 30, 2021, by Sidhartha Mukherjee, and Sunita Mukherjee, husband and wife .

MAKENSEY WILSON
Notary Public, State of Texas
Comm. Expires 05-15-2022
Notary ID 129621200

_____
Notary Public - State of Texas

After recording return to:

J. Davenport
6023 Timber Creek
Dallas, Texas 75248

14

# NON-HOMESTEAD AFFIDAVIT AND DESIGNATION OF HOMESTEAD

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF   COLLIN | § | |

BEFORE ME, the undersigned authority, a Notary Public in and for the State of Texas, on this day personally appeared **Sidhartha Mukherjee** and **Sunita Mukherjee**, Affiants, husband and wife, who, after being by me first duly sworn, upon their oath, did depose and say that they are over the age of twenty-one (21) years, that they are not incapacitated in any way, and that the following facts are true and correct:

Affiants own and possess the following described property in Collin County, Texas, for investment, resale or other nonhomestead purposes and such property is in excess of the lands that they own which are exempt by law from forced sale. Affiants <u>do not</u> reside upon the property immediately described below, and Affiants do not claim the same as either a business homestead or residential homestead. Affiants have no intention of ever using or claiming the same as either a business homestead or a residential homestead. Affiants hereby renounce and disclaim any homestead right, interest or exemption whatsoever of the property described as:

Lot 13, in Block C, of Stoney Hollow, Phase Three, an addition to the City of Plano, Collin County, Texas, according to the Plat thereof recorded in Cabinet K, at Pages 651, 652, of the Plat Records of Collin County, Texas, located at 3905 Kite Meadow Dr., Plano, Texas

Affiants now reside upon, use and claim the hereinafter described real property located in Garland County, Texas, as their legal residential homestead. Their homestead is improved with a dwelling house and is amply sufficient as a homestead for them. The address of their homestead is 2705 Holm Drive, Garland, Texas 75041 and is more fully described as follows:

Lot 10, Block 8, Claremont Place, an addition in Garland, Dallas, County, Texas

Affiants have no business homestead.

Affiants have read this instrument and they fully understand the representations herein made and the purpose, intent and effect thereof. Specifically, this affidavit and the statements and representations herein contained are made for the express purpose of inducing Ceasons Holdings., LLC, ("Lender") to make a loan which will be secured by the first described property located in Collin County, Texas, and for the purpose of inducing Tiago Title, LLC ("Title Company") to issue its lender title policy insuring said loan to be a first and superior lien against the first described property. Affiants understand that Lender and Title Company are relying upon the statements herein contained as a material inducement in making said loan and issuing the lender title policy.

1

Exhibit 3

_(signature)_
_____
Sidhartha Mukherjee

_(signature)_
_____
Sunita Mukherjee

        SUBSCRIBED AND SWORN TO BEFORE ME on November 30, 2021, to certify which witness
my hand and seal of office.

_(signature)_
_____
Notary Public - State of Texas


THE STATE OF TEXAS                          §

COUNTY OF   COLLIN                          §

        This instrument was acknowledged before me on November 30, 2021, by Sidhartha Mukherjee and
Sunita Mulherjee, husband and wife.

```
+-------------------------------------+
|        MAKENSEY WILSON              |
|   Notary Public, State of Texas     |
|    Comm. Expires 05-15-2022         |
|      Notary ID 129821200            |
+-------------------------------------+
```

_(signature)_
_____
Notary Public - State of Texas


after recording return to:
J  Davenport
6008 Gentle Knoll
Dallas Texas 75248


2

Exhibit A
Subordination, Non-Disturbance and Attornment Agreement

Lot 13, in Block C, of Stoney Hollow, Phase Three, an addition to the City of Plano, Collin County, Texas, according to the Plat thereof recorded in Cabinet K, at Pages 651, 652, of the Plat Records of Collin County, Texas, located at 3905 Kite Meadow Dr., Plano, Texas

1

## SUBORDINATION, NON-DISTURBANCE, AND ATTORNMENT AGREEMENT

This Subordination, Non-Disturbance, and Attornment Agreement ("Agreement") is made by and between Ceasons Holdings, LLC ("Lender"), Sidhartha Mukherjee ("Landlord"), and Nimesh Amlesh Mody ("Tenant")

WHEREAS, Lender has made or will make a loan (the "Loan") to Landlord in the original principal sum of $300,000.00 secured by a deed of trust to John Davenport, Trustee (the "Mortgage") on the property located at 3905 Kite Meadow, Plano, Texas, more fully described on Exhibit "A" attached to and made a part of this Agreement for all purposes (the "Property"). The Mortgage is recorded or will be recorded in the Official Records of Collin County, Texas; and

WHEREAS, In addition to the Mortgage, the Loan is secured by certain other documents, including, without limitation, an Assignment of Rents pursuant to the Uniform Assignment of Rents Act, Texas Property Code Chapter as set forth in the Mortgage recorded or to be recorded in the Official Records of Collin County, Texas. The Mortgage and such other security documents are referred to in this Agreement as the "Security Documents"); and

WHEREAS, Landlord and Tenant entered into that certain Lease Agreement, a true correct and complete copy of which is attached hereto (the "Lease") which covers the Property or a portion thereof (the "Demised Premises").

WHEREAS, Lender and Tenant wish to clarify (i) their respective positions during the period in which the Security Documents are in effect, including, without limitation, during the period in which the Landlord is in default but the Lender has not foreclosed, and (ii) the relationship of the parties after the foreclosure of the Mortgage.

NOW, THEREFORE, for and in consideration of the matters set forth in the Recitals and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, Lender, Landlord, and Tenant hereby agree as follows:

1.      The Lease is and shall be subordinate to the Security Documents in all matters.

2.      Upon the foreclosure of the lien of the Mortgage or conveyance in lieu of foreclosure of the lien of the Mortgage, the Lease shall, provided Tenant is not in default under the Lease, shall continue in full force and effect as a direct lease between Tenant and the owner of the Premises as landlord. Tenant shall attorn to Lender or other owner. Provided that, Lender is not bound to recognize any extension or amendment to the Lease to which Lender did not consent; Mortgage shall not recognize any rents paid by Tenant more than one month in advance; and, Lender is not liable for any default by Landlord under the Lease.

3.      Tenant agrees to recognize the assignment of the Lease made by Landlord to Lender pursuant to the Security Instruments and agrees to pay Lender as assignee, the rents and other payments due under the Lease from and after the time Tenant receives written notice from Lender requesting such sums be paid Lender without further consent by Landlord. Tenant shall continue to pay Lender rent and other amounts due until Tenant receives written notice from Lender to stop or to pay rents to someone else.

1

4.    Tenant certifies to Lender and agrees that;

    a.    The Lease attached hereto is the complete agreement between Landlord and Tenant concerning the Premises; and there are no amendments or side agreements pertaining thereto;

    b.    Tenant, and only Tenant, is in possession of the Premises; and there are no assignments of he Lease or subleases of the Premises;

    c.    There are no defaults by Landlord or Tenant of the Lease, and no act or event has occurred that, notice or the passage of time or both, will result in a default under the Lease;

5.    <u>Miscellaneous:</u>

    a.    <u>Restriction on amendment or extension.</u> Landlord and Tenant agree not to amend the Lease or extend its term without the prior written consent of Lender.

    b.    <u>Notices:</u> All notices, requests, consents, demands, and other communications required or which any party desires to give with respect to any matter set forth in this Agreement must be in writing and will be deemed delivered and received upon actual receipt by messenger or three (3) days after being deposited in the United States mail, postage prepaid, certified mail, return receipt requested, addressed to the applicable party at the addresses set forth below:

Lender:            Ceasons Holdings, LLC
                   6023 Timber Creek
                   Dallas, Texas 75248

Landlord:          Sidhartha Mukherjee
                   2705 Holm Drive
                   Garland, Texas 75041

Tenant:            Nimesh Amlesh Mody
                   3905 Kite Meadow
                   Plano, Texas 75074

Any party may designate another address by written notice to the other parties.

    c.    <u>Binding Effect:</u> This Agreement inures to the benefit of and is binding upon the parties and their respective successors and assigns.

    e.    <u>Court Costs, Attorneys' Fees, Governing Law, and Venue.</u>  In the event that at any time any party to this Agreement institutes any action or proceeding against any other party to this Agreement relating to the provisions of this Agreement, then the prevailing party in such action or proceeding is entitled to recover from the other party its reasonable and necessary costs, expenses, and attorneys' fees in connection with such action or proceeding. This Agreement must be construed in accordance with the laws of the State of Texas, and

2

DocuSign Envelope ID: 560D976B-5FA4-49DE-A6B5-697F1768A685

the parties agree in the event of court action, venue will be in Dallas County, Texas.

f.    <u>Headings</u>. The headings appearing in this Agreement are for the purpose of easy reference only and cannot be considered a part of this Agreement nor do they in any way modify, amend, limit, or affect the provisions this Agreement.

g.    <u>Modifications</u>. Any modification of this Agreement must be in writing and duly signed by Lender, Landlord, and Tenant.

h.    <u>Severability</u>. If any term or provision of this Agreement is found to be invalid, illegal, or unenforceable, the remaining terms and provisions of this Agreement will not be affected thereby, and each term and provision of this Agreement is valid and enforceable to the fullest extent permitted by law.

LENDER:

Ceasons Holdings, LLC

By:_____
    John Davenport, Manager
Signed this \_\_\_ day of November, 2010

LANDLORD:

By: _Sidhartha Mukherjee_
Sidhartha Mukherjee
Signed this \_\_\_ day of November, 2021

TENANT

_Nimesh Amlesh Mody_
Nimesh Amlesh Mody
Signed this \_\_\_ day of November, 2021

3



# TEXAS REALTORS

## RESIDENTIAL LEASE

USE OF THIS FORM BY PERSONS WHO ARE NOT MEMBERS OF THE TEXAS ASSOCIATION OF REALTORS®, INC. IS NOT AUTHORIZED.
©Texas Association of REALTORS®, Inc. 2019

1. **PARTIES:** The parties to this lease are:

   the owner of the Property, Landlord,:  **SIDHARTHA MUKHERJEE**                                    ; and

   Tenant(s):  **NIMESH AMLESH MODY**                                                         .

2. **PROPERTY:** Landlord leases to Tenant the following real property:

   Address:  **3905 KITE MEADOW DRIVE PLANO TX-75074**
   legally described as:  _____

   in **COLLIN**_____ County, Texas, together with the following non-real-property items: _____ .

   The real property and the non-real-property are collectively called the "Property".

3. **TERM:**

   A. <u>Primary Term</u>: The primary term of this lease begins and ends as follows:

   | Commencement Date:  **07/01/2021** | Expiration Date:  **06/30/2022** |

   B. <u>Delay of Occupancy</u>: Tenant must occupy the Property within 5 days after the Commencement Date. If Tenant is unable to occupy the Property by the 5th day after the Commencement Date because of construction on the Property or a prior tenant's holding over of the Property, Tenant may terminate this lease by giving written notice to Landlord before the Property becomes available to be occupied by Tenant, and Landlord will refund to Tenant the security deposit and any rent paid. Landlord will abate rent on a daily basis for a delay caused by construction or a prior tenant's holding over. This paragraph does not apply to any delay in occupancy caused by cleaning, repairs, or make-ready items.

4. **AUTOMATIC RENEWAL AND NOTICE OF TERMINATION:** This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party written notice of termination as provided in Paragraph 4A. Oral notice of termination is not sufficient under any circumstances. Time is of the essence for providing notice of termination (strict compliance with dates by which notice must be provided is required). The date on which rent is due does not apply to the requirement for providing written notice of termination. If a box is not checked under Paragraph 4A, Paragraph 4A(1) will apply. If a box is not checked under Paragraph 4B, Paragraph 4B(1) will apply.

   A. This lease automatically renews on a month-to-month basis unless Landlord or Tenant provides the other party <u>written</u> notice of termination not less than: *(Check only one box.)*
   - [X] (1) 30 days before the Expiration Date.
   - [ ] (2) _____ days before the Expiration Date.

(TXR-2001) 09-01-19        Tenants: ___, ____ , _____ , _____ & Landlord or Landlord's Representative: _____        Page 1 of 16

Residential Lease concerning:   3905 Kite Meadow Drive, Plano TX-75074

If Landlord or Tenant fails to provide the other party timely <u>written</u> notice of termination as required by paragraph 4A, the lease automatically renews on a month-to-month basis. The Landlord or Tenant then must provide a subsequent written notice of termination as required by paragraph 4B.

B. If this lease automatically renews on a month-to-month basis, it will continue to renew on a month-to-month basis until either party provides <u>written</u> notice of termination to the other party and the notice of termination will be effective: *(Check only one box.)*

☒ (1) on the last day of the month following the month in which the notice is given. Landlord is not obligated to prorate rent even if Tenant surrenders the Property before the termination date.
☐ (2) on the date designated in the notice but not sooner than 30 days after the notice is given and, if necessary, rent will be prorated on a daily basis.

5. **RENT:** 12 Months in Advance $36,000.00 & Security Deposit of $2000.00 Total $38,000 will be paid on July 01,2021

A. <u>Monthly Rent</u>: Tenant will pay Landlord monthly rent in the amount of $ 3000.00 for each full month during this lease. The first full month's rent is due and payable not later than by *(select one or more)*: ☐ cashier's check ☐ electronic payment ☐ money order ☐ personal check or ☐ other means acceptable to Landlord.
Thereafter, Tenant will pay the monthly rent so that Landlord receives the monthly rent on or before *(check only one box)*:
☐ (1) the first day of each month during this lease.
☐ (2) _____ .
Weekends, holidays, and mail delays do not excuse Tenant's obligation to timely pay rent.

B. <u>Prorated Rent</u>: On or before _____ Tenant will pay Landlord $ _____ as prorated rent from the Commencement Date through the last day of the month in which this lease begins.

C. <u>Place of Payment</u>: Unless this lease provides otherwise, Tenant will remit all amounts due to Landlord under this lease to the following person or entity at the place stated and make all payments payable to the named person or entity. Landlord may later designate, in writing, another person or place to which Tenant must remit amounts due under this lease.
   Name: _____
   Address: _____
   _____

**Notice: Place the Property address and Tenant's name on all payments.**

D. <u>Method of Payment</u>:
   (1) Tenant must pay all rent timely and without demand, deduction, or offset, except as permitted by law or this lease.
   (2) Time is of the essence for the payment of rent (strict compliance with rental due dates is required).
   (3) Unless the parties agree otherwise, Tenant may not pay rent in cash and will pay all rent by *(select one or more)*: ☐ cashier's check ☒ electronic payment ☐ money order ☐ personal check or ☐ other means acceptable to Landlord. Landlord ☐ may or ☐ may not charge a reasonable fee to process or accept payment by *(select one or more only if Landlord indicates a reasonable fee may be charged)*: ☐ cashier's check ☐ electronic payment ☐ money order ☐ personal check or ☐ other means acceptable to Landlord.
   (4) Landlord ☐ requires ☐ does not require Tenant(s) to pay monthly rents by one payment.
   (5) If Tenant fails to timely pay any amounts due under this lease or if any check of Tenant is not honored by the institution on which it was drawn, Landlord may require Tenant to pay such amount and any subsequent amounts under this lease in certified funds. This paragraph does not limit Landlord from seeking other remedies under this lease for Tenant's failure to make timely payments with good funds.

(TXR-2001) 09-01-19      Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____      Page 2 of 16

Residential Lease concerning:  **3905 Kite Meadow Drive, Plano TX-75074**

E. <u>Rent Increases</u>: There will be no rent increases through the primary term. Landlord may increase the rent that will be paid during any month-to-month renewal period by providing at least 30 days written notice to Tenant.

**6. LATE CHARGES:**

A. If Landlord does not <u>actually receive</u> a rent payment in the full amount at the designated place of payment by the _____ day of each month at 11:59pm, Tenant will pay Landlord for each late payment:

   (1) an initial late charge equal to *(check one box only):* ☐ (a) $ _____ ; or ☐ (b) _____ % of one month's rent; **and**

   (2) additional late charges of $ _____ per day thereafter until rent and late charges are paid in full. Additional late charges for any one payment may not exceed more than 30 days.
**Notice: §92.019, Property Code prohibits assessing a late fee until rent has remained unpaid for at least two full days after the date on which the rent is due.**

B. For the purposes of paying rent and any late charges, the mailbox is not the agent for receipt for Landlord (the postmark date is not the date Landlord receives the payment). The parties agree that the late charge is reasonable based on uncertain damages to the Landlord related to the late payment of rent, including direct or indirect expenses, direct or indirect costs, or overhead associated with the collection of late payment. Landlord's acceptance of a late charge does not waive Landlord's right to exercise remedies under Paragraph 27.

**7. RETURNED PAYMENT:** Tenant will pay Landlord $ _____ for each payment Tenant tenders to Landlord which is returned or not honored by the institution on which it is drawn for any reason, <u>plus any late charges until Landlord receives payment</u>. Tenant must make any returned payment good by paying such amount(s) plus any associated charges in certified funds.

**8. APPLICATION OF FUNDS:** <u>Regardless of any notation on a payment, Landlord may apply funds received from Tenant first to any non-rent obligations of Tenant, including but not limited to, late charges, returned payment charges, repairs, brokerage fees, periodic utilities, pet charges, and then to rent.</u>

**9. PETS:**

A. Unless the parties agree otherwise in writing, <u>Tenant may not permit, even temporarily, any pet on the Property</u> (including but not limited to any mammal, reptile, bird, fish, rodent, or insect). An assistance animal is not considered a pet.

B. If Tenant violates this Paragraph 9 or any agreement to keep a pet on the Property, Landlord may take all or any of the following action:
   (1) declare Tenant to be in default of this lease and exercise Landlord's remedies under Paragraph 27;
   (2) charge Tenant, as additional rent, an initial amount of $ _____ and $ _____ per day thereafter per pet for each day Tenant violates the pet restrictions;
   (3) remove or cause to be removed any unauthorized pet and deliver it to appropriate local authorities by providing at least 24-hour written notice to Tenant of Landlord's intention to remove the unauthorized pet; and
   (4) charge to Tenant the Landlord's cost to:
      (a) remove any unauthorized pet;
      (b) exterminate the Property for fleas and other insects;
      (c) clean and deodorize the Property's carpets and drapes; and
      (d) repair any damage to the Property caused by the unauthorized pet.

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

Residential Lease concerning:   3905 Kite Meadow Drive, Plano TX-75074

C. When taking any action under Paragraph 9B Landlord will not be liable for any harm, injury, death, or sickness to any pet.

**10. SECURITY DEPOSIT:**

A. <u>Security Deposit</u>: On or before execution of this lease, Tenant will pay a security deposit to Landlord in the amount of $ __2000.00__ by *(select one or more)*: ☐ cashier's check ☒ electronic payment ☐ money order ☐ personal check or ☐ other means acceptable to Landlord. "Security deposit" has the meaning assigned to that term in §92.102, Property Code. Any additional deposits Tenant pays to Landlord, other than the security deposit, will become part of the security deposit.

B. <u>Interest</u>: No interest or income will be paid to Tenant on the security deposit. Landlord may place the security deposit in an interest-bearing or income-producing account and any interest or income earned will be paid to Landlord or Landlord's representative.

C. <u>Refund</u>: <u>Tenant must give Landlord at least thirty (30) days written notice of surrender before Landlord is obligated to account for or refund the security deposit. Any refund of the security deposit will be made payable to all Tenants named in this lease.</u>

**Notices about Security Deposits:**
**(1) §92.108, Property Code provides that a tenant may not withhold payment of any portion of the last month's rent on grounds that the security deposit is security for unpaid rent.**
**(2) Bad faith violations of §92.108 may subject a tenant to liability up to 3 times the rent wrongfully withheld and the landlord's reasonable attorney's fees.**
**(3) The Property Code does not obligate a landlord to return or account for the security deposit until the tenant surrenders the Property and gives the landlord a written statement of the tenant's forwarding address, after which the landlord has 30 days in which to account.**
**(4) "Surrender" is defined in Paragraph 16 of this lease.**
**(5) One may view the Texas Property Code at the Texas Legislature's website which, as of the date shown in the lower left-hand corner of this form, is http://www.statutes.legis.state.tx.us/.**

D. <u>Deductions</u>:

(1) Landlord may deduct reasonable charges from the security deposit for:
   (a) damages to the Property, excluding normal wear and tear, and all reasonable costs associated to repair the Property;
   (b) costs for which Tenant is responsible to clean, deodorize, exterminate, and maintain the Property;
   (c) unpaid or accelerated rent;
   (d) unpaid late charges;
   (e) unpaid utilities and utility expenses Landlord incurs to maintain utilities to the Property as required by this Lease;
   (f) unpaid pet charges;
   (g) replacing unreturned keys, garage door openers, security devices, or other components;
   (h) the removal of unauthorized locks or fixtures installed by Tenant;
   (i) Landlord's cost to access the Property if made inaccessible by Tenant;
   (j) missing or burned-out light bulbs and fluorescent tubes (at the same location and of the same type and quality that are in the Property on the Commencement Date);
   (k) packing, removing, and storing abandoned property;
   (l) removing abandoned or illegally parked vehicles;

(TXR-2001) 09-01-19      Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____, _____    Page 4 of 16

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Residential Lease concerning:   3905 Kite Meadow Drive, Plano TX-75074

    (m) costs of reletting (as defined in Paragraph 27), if Tenant is in default;

    (n) attorney's fees, costs of court, costs of service, and other reasonable costs incurred in any legal proceeding against Tenant;

    (o) mailing costs associated with sending notices to Tenant for any violations of this lease;

    (p) any other unpaid charges or fees or other items for which Tenant is responsible under this lease;

    (q) cost to restore walls, flooring, landscaping or any alteration to the Property not approved in writing by Landlord;

    (r) damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris; and

    (s) costs to rekey certain security devices, as provided in Paragraph 19.

(2) If deductions exceed the security deposit, Tenant will pay to Landlord the excess within 10 days after Landlord makes written demand.

## 11. UTILITIES:

A. Tenant will pay all connection fees, service fees, usage fees, and all other costs and fees for all utilities to the Property (for example, electricity, gas, water, wastewater, garbage, telephone, alarm monitoring systems, cable, and Internet connections) except the following which Landlord will pay: _____

   **Electricity, Water, Gas & Internet Charges are included in the monthly rent of $3,000.00**
_____.

Unless otherwise agreed, amounts under this paragraph are payable directly to the service providers.

B. Unless provided by Landlord, Tenant must, at a minimum, keep the following utilities on, if available, at all times this lease is in effect: gas; electricity; water; wastewater; and garbage services.

**Notice: Before signing this lease, Tenant should determine if all necessary utilities are available to the Property and are adequate for Tenant's use.**

## 12. USE AND OCCUPANCY:

A. <u>Occupants</u>: Tenant may use the Property as a private residence only. The only persons Tenant may permit to reside on the Property during the term of this lease are (*include names and ages of all occupants*):      **1.  Piya Mody  -34 Years 2. Jai Mody -10 years 3. nanda Bhattacharya -68 years**
_____
_____.

B. <u>Phone Numbers and E-mail</u>: Tenant must promptly inform Landlord of any changes in Tenant's phone numbers (home, work, and mobile) and e-mail not later than 5 days after a change.

C. <u>HOA Rules</u>: Tenant must comply with any owners' association rules or restrictive covenants affecting the Property. Tenant will reimburse Landlord for any fines or other charges assessed against Landlord for violations by Tenant of any owners' association rule or restrictive covenant, and any resulting administrative fees assessed by Landlord's agents or any other entity as provided by law.

D. <u>Prohibitions</u>: Unless otherwise authorized by this lease, Tenant may not install or permit any of the following on the Property, even temporarily: a spa, hot tub, above-ground pool, trampoline, or any item which causes a suspension or cancellation of insurance coverage or an increase in insurance premiums. Tenant may not permit any part of the Property to be used for: (1) any activity which is a nuisance, offensive, noisy, or dangerous; (2) the repair of any vehicle; (3) any business of any type, including but not limited to child care; (4) any activity which violates any zoning ordinance, owners' association rule, or restrictive covenant; (5) any illegal or unlawful activity; or (6) activity that obstructs, interferes with, or infringes on the rights of other persons near the Property.

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

Residential Lease concerning:  __3905 Kite Meadow Drive, Plano TX-75074__

E. <u>Guests</u>: Tenant may not permit any guest to stay on the Property longer than the amount of time permitted by any owners' association rule or restrictive covenant or _____ days without Landlord's written permission, whichever is less.

F. <u>Common Areas</u>: Landlord is not obligated to pay any non-mandatory or user fees for Tenant's use of any common areas or facilities (for example, pool or tennis courts).

**13. PARKING RULES:** Tenant may not permit more than __3__ vehicles, including but not limited to automobiles, trucks, recreational vehicles, trailers, motorcycles, all-terrain vehicles, jet skis, and boats, on the Property unless authorized by Landlord in writing. Tenant may not park or permit any person to park any vehicles in the yard. Tenant may permit vehicles to be parked only in drives, garages, designated common parking areas, or in the street if not prohibited by law or an owners' association. Tenant may not store or permit any person to store any vehicles on or adjacent to the Property or on the street in front of the Property. In accordance with applicable state and local laws, Landlord may have towed, at Tenant's expense: (a) any inoperative vehicle on or adjacent to the Property; (b) any vehicle parked in violation of this paragraph or any additional parking rules made part of this lease; or (c) any vehicle parked in violation of any law, local ordinance, or owners' association rule. Tenant must promptly inform Landlord of any changes in Tenant's vehicle information (type, year, make, model, and license plate number including state) not later than 5 days after a change.

**14. ACCESS BY LANDLORD:**

A. <u>Advertising</u>: Landlord may prominently display a "For Sale" or "For Lease" or similarly worded sign on the Property during the term of this lease or any renewal period. Landlord or Landlord's contractor may take interior or exterior photographs or images of the Property and use the photographs or images in any advertisements to lease or sell the Property.

B. <u>Access</u>: Before accessing the Property, Landlord or anyone authorized by Landlord will attempt to first contact Tenant, but may enter the Property at reasonable times without notice to make repairs or to show the Property to prospective tenants or buyers, inspectors, fire marshals, lenders, appraisers, or insurance agents. Additionally, Landlord or anyone authorized by Landlord may peacefully enter the Property at reasonable times without first attempting to contact Tenant and without notice to: (1) survey or review the Property's condition and take photographs to document the condition; (2) make emergency repairs; (3) exercise a contractual or statutory lien; (4) leave written notices; or (5) seize nonexempt property if Tenant is in default.

C. <u>Trip Charges</u>: If Landlord or Landlord's agents have made prior arrangements with Tenant to access the Property and are denied or are not able to access the Property because of Tenant's failure to make the Property accessible (including, but not limited to, any occupant, guest or invitee of Tenant, pet, or security device prohibiting access to any area of the Property), Landlord may charge Tenant a trip charge of $ _____ .

D. <u>Keybox</u>: **A keybox is a locked container placed on the Property holding a key to the Property. The keybox is opened by a special combination, key, or programmed access device so that persons with the access device may enter the Property, even in Tenant's absence. The keybox is a convenience but involves risk (such as unauthorized entry, theft, property damage, or personal injury). Neither the Association of REALTORS® nor MLS requires the use of a keybox.**

(1) Tenant authorizes Landlord, Landlord's property manager, and Landlord's broker to place on the Property a keybox containing a key to the Property:
(a) during the last _____ days of this lease or any renewal or extension; and
(b) at any time Landlord lists the Property for sale with a Texas licensed broker.

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

Residential Lease concerning:   **3905 Kite Meadow Drive, Plano TX-75074**

(2) Tenant may withdraw Tenant's authorization to place a keybox on the Property by providing written notice to Landlord and paying Landlord a fee of $ _____ as consideration for the withdrawal. Landlord will remove the keybox within a reasonable time after receipt of the notice of withdrawal and payment of the required fee. Removal of the keybox does not alleviate Tenant's obligation to make the Property available for showings as indicated in Paragraph 14B.

(3) If Landlord or Landlord's agents are denied or are not able to access the Property after first attempting to contact Tenant, Landlord may charge Tenant a trip charge as provided in Paragraph 14C.

(4) Landlord, the property manager, and Landlord's broker are not responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses arising from use of the keybox unless caused by Landlord, the property manager, or Landlord's broker.

## 15. MOVE-IN CONDITION:

A. Landlord makes no express or implied warranties as to the Property's condition. Tenant has inspected the Property and accepts it **AS-IS** provided that Landlord: _____
   **Furnished with Furniture & Fixtures**
   _____ .

B. Tenant will complete an Inventory and Condition Form, noting any damages to the Property, and deliver it to Landlord within **15** _____ days after the Commencement Date. If Tenant fails to timely deliver the Inventory and Condition Form, the Property will be deemed to be free of damages, unless otherwise expressed in this lease. The Inventory and Condition Form is not a request for repairs. Tenant must direct all requests for repairs in compliance with Paragraph 18.

## 16. MOVE-OUT:

A. Move-Out Condition: When this lease ends, Tenant will surrender the Property in the same condition as when received, normal wear and tear excepted. Tenant will leave the Property in a clean condition free of all trash, debris, and any personal property. Tenant may not abandon the Property.

B. Definitions:

(1) *"Normal wear and tear"* means deterioration that occurs without negligence, carelessness, accident, or abuse.

(2) *"Surrender"* occurs when all occupants have vacated the Property, in Landlord's reasonable judgment, and one of the following events occurs:
   (a) the date Tenant specifies as the move-out or termination date in a written notice to Landlord has passed; or
   (b) Tenant returns keys and access devices that Landlord provided to Tenant under this lease.

(3) *"Abandonment"* occurs when all of the following occur:
   (a) all occupants have vacated the Property, in Landlord's reasonable judgment;
   (b) Tenant is in breach of this lease by not timely paying rent; and
   (c) Landlord has delivered written notice to Tenant, by affixing it to the inside of the main entry door or if the Landlord is prevented from entering the Property by affixing it to the outside of the main entry door, stating that Landlord considers the Property abandoned, and Tenant fails to respond to the affixed notice by the time required in the notice, which will not be less than 2 days from the date the notice is affixed to the main entry door.

(TXR-2001) 09-01-19     Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____, _____     Page 7 of 16

Residential Lease concerning: **3905 Kite Meadow Drive, Plano TX-75074**

C. <u>Personal Property Left After Move-Out</u>:

    (1) If Tenant leaves any personal property in the Property after surrendering or abandoning the Property Landlord may:
        (a) dispose of such personal property in the trash or a landfill;
        (b) give such personal property to a charitable organization; or
        (c) store and sell such personal property by following procedures in §54.045(b)-(e), Property Code.

    (2) Tenant must reimburse Landlord all Landlord's reasonable costs under Paragraph 16C(1) for packing, removing, storing, and selling the personal property left in the Property after surrender or abandonment.

## 17. PROPERTY MAINTENANCE:

A. <u>Tenant's General Responsibilities</u>: Tenant, at Tenant's expense, must:
    (1) keep the Property clean and sanitary;
    (2) promptly dispose of all garbage in appropriate receptacles;
    (3) supply and change heating and air conditioning filters at least once a month;
    (4) supply and replace all light bulbs, fluorescent tubes, and batteries for smoke alarms, carbon monoxide detectors, garage door openers, ceiling fan remotes, and other devices (of the same type and quality that are in the Property on the Commencement Date);
    (5) maintain appropriate levels of necessary chemicals or matter in any water softener;
    (6) take action to promptly eliminate any dangerous condition on the Property;
    (7) take all necessary precautions to prevent broken water pipes due to freezing or other causes;
    (8) replace any lost or misplaced keys;
    (9) pay any periodic, preventive, or additional extermination costs desired by Tenant, including treatment for bed bugs, unless otherwise required by law;
    (10) remove any standing water;
    (11) know the location and operation of the main water cut-off valve and all electric breakers and how to switch the valve or breakers off at appropriate times to mitigate any potential damage;
    (12) water the foundation of the Property at reasonable and appropriate times; and
    (13) promptly notify Landlord, in writing, of all needed repairs.

B. <u>Yard Maintenance</u>:

    (1) *"Yard"* means all lawns, shrubbery, bushes, flowers, gardens, trees, rock or other landscaping, and other foliage on or encroaching on the Property or on any easement appurtenant to the Property, and does not include common areas maintained by an owners' association.

    (2) *"Maintain the yard"* means to perform activities such as, but not limited to: (a) mowing, fertilizing, and trimming the yard; (b) controlling pests and weeds in the yard; and (c) removing debris from the yard.

    (3) Unless prohibited by ordinance or other law, Tenant will water the yard at reasonable and appropriate times including but not limited to the following times: _____

    _____

    _____ . Other than watering, the yard will be maintained as follows:

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Residential Lease concerning:   __3905 Kite Meadow Drive, Plano TX-75074__

☐ (a) Landlord, at Landlord's expense, will maintain the yard. Tenant will permit Landlord and Landlord's contractors reasonable access to the yard and will remove any pet from the yard at appropriate times.

☒ (b) Tenant, at Tenant's expense, will maintain the yard.

☐ (c) Tenant will maintain in effect a scheduled yard maintenance contract with: ☐ a contractor who regularly provides such service; ☐ _____ .

C. Pool/Spa Maintenance: Any pool or spa on the Property will be maintained according to a Pool/Spa Maintenance Addendum.

D. Prohibitions: If Tenant installs any fixtures on the Property, authorized or unauthorized, such as additional smoke alarms, additional carbon monoxide detectors, locks, alarm systems, cables, satellite dishes, or other fixtures, such fixtures will become the property of the Landlord. Except as otherwise permitted by law, this lease, or in writing by Landlord, Tenant may not:
(1) remove any part of the Property or any of Landlord's personal property from the Property;
(2) remove, change, add, or rekey any lock;
(3) make holes in the woodwork, floors, or walls, except that a reasonable number of small nails may be used to hang pictures in sheetrock and grooves in paneling;
(4) permit any water furniture on the Property;
(5) install additional phone or video cables, outlets, antennas, satellite receivers, or alarm systems;
(6) alter, replace or remove flooring material, paint, or wallpaper;
(7) install, change, or remove any: fixture, appliance, or non-real-property item listed in Paragraph 2;
(8) keep or permit any hazardous material on the Property such as flammable or explosive materials;
(9) keep or permit any material or item which causes any liability or fire and extended insurance coverage to be suspended or canceled or any premiums to be increased;
(10) dispose of any environmentally detrimental substance (for example, motor oil or radiator fluid) on the Property;
(11) cause or allow any lien to be filed against any portion of the Property; or
(12) disconnect or intentionally damage any carbon monoxide detector, or otherwise violate any local ordinance requiring a carbon monoxide detector in the Property.

E. Failure to Maintain: If Tenant fails to comply with this Paragraph 17 or any Pool/Spa Maintenance Addendum, Landlord may, in addition to exercising Landlord's remedies under Paragraph 27, perform whatever action Tenant is obligated to perform and Tenant must immediately reimburse Landlord the reasonable expenses that Landlord incurs plus any administrative fees assessed by Landlord's agents or any other entity as provided by law.

F. Smoking: Smoking by Tenant, Tenant's guests, family, or occupants is ☐ permitted ☐ not permitted on the Property (including, but not limited to, the garage or outdoor areas of the Property). If smoking is not permitted and does occur on the Property, Tenant will be in default and:
(1) Landlord may exercise Landlord's remedies under Paragraph 27; and
(2) Landlord may deduct from the security deposit damages to the Property caused by smoking, including but not limited to stains, burns, odors, and removal of debris.

**18. REPAIRS:** (Notice: Subchapter B, Chapter 92, Property Code governs repair obligations).

A. **Repair Requests: All requests for repairs must be in writing and delivered to Landlord. If Tenant is delinquent in rent at the time a repair notice is given, Landlord is not obligated to make the repair. In the event of an emergency related to the condition of the Property that materially affects the physical health or safety of an ordinary tenant, Tenant may call Landlord or, if applicable, the property manager, at _____. Ordinarily, a repair to the heating and air conditioning system is not an emergency.**

(TXR-2001) 09-01-19      Tenants: \Mw, _____ , _____ , _____ & Landlord or Landlord's Representative: __ , _____      Page 9 of 16

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Residential Lease concerning:  **3905 Kite Meadow Drive, Plano TX-75074**

B. **NOTICE:** If Landlord fails to repair a condition that materially affects the physical health or safety of an ordinary tenant as required by this lease or the Property Code, Tenant may be entitled to exercise remedies under §92.056 and §92.0561 of the Property Code. If Tenant follows the procedures under those sections, the following remedies may be available to Tenant: (1) terminate the lease and obtain an appropriate refund under §92.056(f); (2) have the condition repaired or remedied according to §92.0561; (3) deduct from the rent the cost of the repair or remedy according to §92.0561; and (4) obtain judicial remedies according to §92.0563. <u>Do not exercise these remedies without consulting an attorney or carefully reviewing the procedures under the applicable sections.</u> The Property Code presumes that 7 days is a reasonable period of time for the Landlord to make a diligent effort to repair a condition unless there are circumstances which establish that a different period of time is appropriate (such as the severity and nature of the condition and the availability of materials, labor, and utilities). Failure to strictly follow the procedures in the applicable sections may cause Tenant to be in default of the lease.

C. <u>Completion of Repairs</u>:

(1) Tenant may not repair or cause to be repaired any condition, regardless of the cause, without Landlord's permission. All decisions regarding repairs, including the completion of any repair, whether to repair or replace the item, and the selection of contractors, will be at Landlord's sole discretion.

(2) Landlord is not obligated to complete a repair on a day other than a business day unless required to do so by the Property Code.

D. <u>Payment of Repair Costs</u>:

(1) Except as otherwise specified in this lease, Landlord will pay to repair or remedy conditions in the Property in need of repair if Tenant complies with the procedures for requesting repairs as described in this Paragraph 18. This includes, but is not limited to, repairs to the following items not caused by Tenant or Tenant's negligence:
(a) heating and air conditioning systems;
(b) water heaters; or
(c) water penetration from structural defects.

(2) Landlord will NOT pay to repair the following items unless caused by Landlord's negligence:
(a) conditions caused by Tenant, an Occupant, or any guest or invitee of Tenant;
(b) damage to doors, windows, and screens;
(c) damage from windows or doors left open;
(d) damage from wastewater stoppages caused by foreign or improper objects in lines that exclusively serve the Property;
(e) items that are cosmetic in nature with no impact on the functionality or use of the item; and
(f) the following specific items or appliances: _____

_____.

E. <u>Trip Charges</u>: If a repair person is unable to access the Property after making arrangements with Tenant to complete the repair, Tenant will pay any trip charge the repair person may charge, which amount may be different from the amount stated in Paragraph 14C.

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Residential Lease concerning:   **3905 Kite Meadow Drive, Plano TX-75074**

F.  **Advance Payments and Reimbursements:** Landlord may require advance payment of repairs or payments under this Paragraph 18 for which Tenant is responsible. Tenant must promptly reimburse Landlord the amounts under this Paragraph 18 for which Tenant is responsible.

**19. SECURITY DEVICES AND EXTERIOR DOOR LOCKS:**

A.  Subchapter D, Chapter 92, Property Code requires the Property to be equipped with certain types of locks and security devices, including (with some exceptions): (1) window latches on each window; (2) a keyed doorknob lock or keyed deadbolt lock on each exterior door; (3) a sliding door pin lock on each exterior sliding glass door of the dwelling; (4) a sliding door handle latch or a sliding door security bar on each exterior sliding glass door of the dwelling; and (5) a keyless bolting device and a door viewer on each exterior door of the Property. Landlord has rekeyed the security devices since the last occupant vacated the Property or will rekey the security devices within 7 days after Tenant moves in. "Security device" has the meaning assigned to that term in §92.151, Property Code.

B.  All notices or requests by Tenant for rekeying, changing, installing, repairing, or replacing security devices must be in writing. Installation of additional security devices or additional rekeying or replacement of security devices desired by Tenant may be paid by Tenant in advance in accordance with §92.162(c), Property Code, and may be installed only by contractors authorized by Landlord.

C.  If Tenant vacates the Property in breach of this lease, Landlord may deduct from the security deposit reasonable costs incurred by Landlord to rekey security devices as authorized by §92.156(e), Property Code.

**20. SMOKE ALARMS:** Subchapter F, Chapter 92, Property Code requires the Property to be equipped with smoke alarms in certain locations. Requests for additional installation, inspection, or repair of smoke alarms must be in writing. Disconnecting or intentionally damaging a smoke alarm or removing a battery without immediately replacing it with a working battery may subject Tenant to civil penalties and liability for damages and attorney fees under §92.2611, Property Code.

**21. LIABILITY:** Unless caused by Landlord, Landlord is <u>not</u> responsible to Tenant, Tenant's guests, family, or occupants for any damages, injuries, or losses to person or property caused by fire, flood, water leaks, ice, snow, hail, winds, explosion, smoke, interruption of utilities, theft, burglary, robbery, assault, vandalism, other persons, condition of the Property, environmental contaminants (for example, carbon monoxide, asbestos, radon, lead-based paint, mold, fungus, etc.), or other occurrences or casualty losses. Unless prohibited by law, Tenant will promptly reimburse Landlord for any damages, injuries, or losses to person or property caused by Tenant, Tenant's guests, any occupants, or any pets or assistance animals, including cost of repairs or service to the Property.

**22. HOLDOVER:** If Tenant fails to vacate the Property at the time this lease ends Tenant will pay Landlord rent for the holdover period and indemnify Landlord and prospective tenants for damages, including but not limited to lost rent, lodging expenses, costs of eviction, and attorneys' fees. Rent for any holdover period will be three (3) times the monthly rent, calculated on a daily basis, and will be immediately due and payable daily without notice or demand.

**23. RESIDENTIAL LANDLORD'S LIEN:** Landlord will have a lien for unpaid rent against all of Tenant's nonexempt personal property that is in the Property and may seize such nonexempt property if Tenant fails to pay rent. Subchapter C, Chapter 54, Property Code governs the rights and obligations of the parties regarding Landlord's lien. Landlord may collect a charge for packing, removing, or storing property seized in addition to any other amounts Landlord is entitled to receive. Landlord may sell or dispose of any seized property in accordance with the provisions of §54.045, Property Code.

**24. SUBORDINATION:** This lease and Tenant's leasehold interest are and will be subject, subordinate, and inferior to: (i) any lien or encumbrance now or later placed on the Property by Landlord; (ii) all advances made under any such lien or encumbrance; (iii) the interest payable on any such lien or encumbrance; (iv) any and all renewals and extensions of any such lien or encumbrance; (v) any restrictive covenant; and (vi) the rights of any owners' association affecting the Property.

(TXR-2001) 09-01-19        Tenants: _____ , _____ , _____ & Landlord or Landlord's Representative: _____        Page 11 of 16

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

Residential Lease concerning: **3905 Kite Meadow Drive, Plano TX-75074**

---

25. **CASUALTY LOSS OR CONDEMNATION:** Section 92.054, Property Code governs the rights and obligations of the parties regarding a casualty loss to the Property. Any proceeds, payment for damages, settlements, awards, or other sums paid because of a casualty loss to the Property will be Landlord's sole property. For the purpose of this lease, any condemnation of all or a part of the Property is a casualty loss.

26. **SPECIAL PROVISIONS:** *(Do not insert a lease-option or lease-purchase clause without the assistance of legal counsel. Special obligations and liabilities under statute apply to such transactions.)*

27. **DEFAULT:**

A.  If Landlord fails to comply with this lease, Tenant may seek any relief provided by law.

B.  If Tenant fails to timely pay all amounts due under this lease or otherwise fails to comply with this lease, Tenant will be in default and:
    (1) Landlord may terminate Tenant's right to occupy the Property by providing Tenant with at least one day written notice to vacate;
    (2) all unpaid rents which are payable during the remainder of this lease or any renewal period will be accelerated without notice or demand;
    (3) Landlord may exercise Landlord's lien under Paragraph 23 and any other rights under this lease or the Property Code; and
    (4) Tenant will be liable for:
        (a) any lost rent;
        (b) Landlord's cost of reletting the Property including but not limited to leasing fees, advertising fees, utility charges, and other fees reasonably necessary to relet the Property;
        (c) repairs to the Property for use beyond normal wear and tear;
        (d) all Landlord's costs associated with eviction of Tenant, including but not limited to attorney's fees, court costs, costs of service, witness fees, and prejudgment interest;
        (e) all Landlord's costs associated with collection of amounts due under this lease, including but not limited to collection fees, late charges, and returned check charges; and
        (f) any other recovery to which Landlord may be entitled by law.

C.  Notice to vacate under Paragraph 27B(1) may be by any means permitted by §24.005, Property Code.

D.  If Tenant vacates the Property in breach of this lease, Landlord may also deduct from the security deposit the reasonable costs to rekey certain security devices, as provided in Paragraph 19.

E.  Landlord will attempt to mitigate any damage or loss caused by Tenant's breach by attempting to relet the Property to acceptable tenants and reducing Tenant's liability accordingly.

28. **EARLY TERMINATION:** This lease begins on the Commencement Date and ends on the Expiration date unless: (i) renewed under Paragraph 4; (ii) extended by written agreement of the parties; or (iii) terminated earlier under Paragraph 27, by agreement of the parties, applicable law, or this Paragraph 28. Unless otherwise provided by law, Tenant is not entitled to early termination due to voluntary or involuntary job or school transfer, changes in marital status, loss of employment, loss of co-tenants, changes in health, purchase of property, or death.

---

(TXR-2001) 09-01-19     Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____, _____     Page 12 of 16

Residential Lease concerning:  __3905 Kite Meadow Drive, Plano TX-75074__

A. <u>Special Statutory Rights</u> Tenants may have special statutory rights to terminate the lease early in certain situations involving family violence, military deployment or transfer, or certain sex offenses or stalking.

  (1) <u>Military</u>: If Tenant is or becomes a servicemember or a dependent of a servicemember, Tenant may terminate this lease by delivering to Landlord a written notice of termination and a copy of an appropriate government document providing evidence of: (a) entrance into military service; (b) military orders for a permanent change of station (PCS); or (c) military orders to deploy with a military unit for not less than 90 days. Termination is effective on the 30th day after the first date on which the next rental payment is due after the date on which the notice is delivered. §92.017, Property Code governs the rights and obligations of the parties under this paragraph.

  (2) <u>Family Violence</u>: Tenant may terminate this lease if Tenant provides Landlord with a copy of documentation described under §92.016, Property Code protecting Tenant or an occupant from family violence committed by a cotenant or occupant of the Property. §92.016, Property Code governs the rights and obligations of the parties under this paragraph. If the family violence is committed by someone other than a cotenant or co-occupant of the Property, Tenant must give written notice of termination 30 days prior to the effective date of the notice.

  (3) <u>Sex Offenses or Stalking</u>: Tenant may have special statutory rights to terminate this lease in certain situations involving certain sexual offenses or stalking, if the Tenant provides Landlord with the documentation required by §92.0161, Property Code. For more information about the types of situations covered by this provision, Tenant is advised to review §92.0161, Property Code.

B. <u>Assignment, Subletting and Replacement Tenants</u>:

  (1) Tenant may not assign this lease or sublet the Property without Landlord's written consent.

  (2) If Tenant requests an early termination of this lease under this Paragraph 28B, Tenant may attempt to find a replacement tenant and may request Landlord to do the same. Landlord may, but is not obligated to, attempt to find a replacement tenant under this paragraph.

  (3) Any assignee, subtenant, or replacement tenant must, in Landlord's discretion, be acceptable as a tenant and must sign: (a) a new lease with terms not less favorable to Landlord than this lease or otherwise acceptable to Landlord; (b) a sublease with terms approved by Landlord; or (c) an assignment of this lease in a form approved by Landlord.

  (4) At the time Landlord agrees to permit an assignee, subtenant, or replacement tenant to occupy the Property, Tenant will pay Landlord:
  (a) if Tenant procures the assignee, subtenant, or replacement tenant:
  ☐ (i) $ _____ .
  ☐ (ii) _____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

  (b) if Landlord procures the assignee, subtenant, or replacement tenant:
  ☐ (i) $ _____.
  ☐ (ii) _____ % of one's month rent that the assignee, subtenant, or replacement tenant is to pay.

  (5) Unless expressly stated otherwise in an assignment or sublease, Tenant will not be released from Tenant's obligations under this lease because of an assignment or sublease. An assignment of this lease or a sublease of this lease without Landlord's written consent is voidable by Landlord.

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5    www.lwolf.com

Residential Lease concerning: **3905 Kite Meadow Drive, Plano TX-75074**

**29. ATTORNEY'S FEES:** Any person who is a prevailing party in any legal proceeding brought under or related to the transaction described in this lease is entitled to recover prejudgment interest, attorney's fees, costs of service, and all other costs of the legal proceeding from the non-prevailing party.

**30. REPRESENTATIONS:** Tenant's statements in this lease and any application for rental are material representations. Each party to this lease represents that he or she is of legal age to enter into a contract. If Tenant makes a misrepresentation in this lease or in an application for rental, Tenant is in default.

**31. ADDENDA:** Incorporated into this lease are the following addenda, exhibits and other information. If Landlord's Rules and Regulations are made part of this lease, Tenant agrees to comply with the Rules and Regulations as Landlord may, at Landlord's discretion, amend from time to time.

| | |
|---|---|
| ☐ Addendum Regarding Lead-Based Paint | ☐ Agreement Between Brokers |
| ☐ Inventory & Condition Form | ☐ Landlord's Rules & Regulations |
| ☐ Landlord's Additional Parking Rules | ☐ Owners' Association Rules |
| ☐ Pet Agreement | ☐ Pool/Spa Maintenance Addendum |
| ☐ Protecting Your Home from Mold | ☐ Residential Lease Application |
| ☐ Residential Lease Guaranty | ☐ Bed Bug Addendum |
| ☐ _____ | ☐ _____ |
| ☐ _____ | ☐ _____ |

**32. NOTICES:** All notices under this lease must be in writing and are effective when hand-delivered, sent by mail, or sent by electronic transmission to *(Do not insert an e-mail address or a fax number unless the party consents to receive notices under this lease at the e-mail address or fax number specified.):*

Tenant at the Property and a copy to:  
_____  
_____  
_____  
E-mail: _____  
Fax: _____  

Landlord c/o:  
_____  
_____  
_____  
E-mail: _____  
Fax: _____  

**33. AGREEMENT OF PARTIES:**

A. <u>Entire Agreement</u>: There are no oral agreements between Landlord and Tenant. This lease contains the entire agreement between Landlord and Tenant and may not be changed except by written agreement.

B. <u>Binding Effect</u>: This lease is binding upon and inures to the benefit of the parties to this lease and their respective heirs, executors, administrators, successors, and permitted assigns.

C. <u>Joint and Several</u>: All Tenants are jointly and severally liable for all provisions of this lease. Any act or notice to, refund to, or signature of, any one or more of the Tenants regarding any term of this lease, its extension, its renewal, or its termination is binding on all Tenants executing this lease.

D. <u>Waiver</u>: Landlord's past delay, waiver, or non-enforcement of a rental due date or any other right will not be deemed to be a waiver of any other breach by Tenant or any other right in this lease.

E. <u>Severable Clauses</u>: Should a court find any clause in this lease unenforceable, the remainder of this lease will not be affected and all other provisions in this lease will remain enforceable.

(TXR-2001) 09-01-19     Tenants: _____ , _____ , _____ & Landlord or Landlord's Representative: _____ , _____     Page 14 of 16

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

Residential Lease concerning: **3905 Kite Meadow Drive, Plano TX-75074**

F. Controlling Law: The laws of the State of Texas govern the interpretation, validity, performance, and enforcement of this lease.

G. Copyright: If an active REALTOR® member of Texas REALTORS® does not negotiate this lease as a party or for one of the parties, with or without assistance by an active member of the State Bar of Texas, this lease is voidable at will by Tenant.

## 34. INFORMATION:

A. Future inquiries about this lease, rental payments, and security deposits should be directed to the person listed for receipt of notices for Landlord under Paragraph 32.

B. It is Tenant's responsibility to determine, before signing this lease, if: (i) all services (e.g., utilities, connections, schools, and transportation) are accessible to or from the Property; (ii) such services are sufficient for Tenant's needs and wishes; and (iii) Tenant is satisfied with the Property's condition.

C. The brokers to this lease have no knowledge of whether Landlord is delinquent in the payment of any lien against the Property.

D. Unpaid rent and any unpaid amount under this lease are reportable to credit reporting agencies.

E. Landlord is not obligated to respond to any requests for Tenant's rental and payment history from a mortgage company or other prospective landlord until Tenant has given notice of termination of this lease and Tenant is not in breach of this lease. (*Notice: Landlord or Landlord's agent may charge a reasonable fee for processing such information*).

F. If all occupants over 18 years of age die during this lease, Landlord may: (i) permit the person named below to access the Property at reasonable times in Landlord's or Landlord's agent's presence; (ii) permit the named person to remove Tenant's personal property; and (iii) refund the security deposit, less deductions, to the named person. Section 92.014, Property Code governs procedures to follow regarding a deceased tenant's personal property and security deposit.
Name: _____ Phone: _____
Address: _____
E-mail: _____

G. The Texas Department of Public Safety maintains a database that the public may search, at no cost, to determine if registered sex offenders are located in certain areas (see https://publicsite.dps.texas.gov/SexOffenderRegistry under on-line services). For information concerning past criminal activity in certain areas, contact the local police department.

H. Landlord's insurance does not cover Tenant from loss of personal property. Landlord highly recommends that Tenant obtain liability insurance and insurance for casualties such as fire, flood, water damage, and theft.

I. Landlord's broker, _____ ,
☐ will ☐ will not act as the property manager for landlord. If Property is not managed by above-named broker, Property will be managed by ☐ Landlord or ☐ property manager for Landlord:
Name of property manager: _____ Phone: _____
Address: _____ E-mail: _____

(TXR-2001) 09-01-19    Tenants: _____, _____, _____, _____ & Landlord or Landlord's Representative: _____, _____    Page 15 of 16

Residential Lease concerning: __3905 Kite Meadow Drive, Plano TX-75074__

J.  This lease should not be used in conjunction with executory contracts of any type, such as contracts for deed, leases with options to purchase, or lease options, without the advice of an attorney.

K.  **This lease is negotiable between the parties. This lease is binding upon final acceptance. READ IT CAREFULLY. If you do not understand the effect of this lease, consult your attorney BEFORE signing.**

| | | |
|---|---|---|
| _Sidhartha Mukherjee_ 06/30/2021 | _Himeshmoy_ | 06/30/2021 |
| Landlord                    Date | Tenant | Date |

| | | |
|---|---|---|
| Landlord                    Date | Tenant | Date |

**Or signed for Landlord under written property management agreement or power of attorney:**

Tenant _____ Date

By: _____
                             Date          Tenant _____ Date

Broker's Associate's Printed Name

Broker's Printed Name          License No.

Firm Name

---

*For Landlord's Use:*

On __06/30/2021_____ * (*date*), Landlord provided a copy of the lease, signed by all parties, to
_____ (Tenant) by ☐ mail ☐ e-mail ☐ fax ☒ in person.

*\*Note: Landlord must provide at least one copy of the lease to at least one Tenant **no later than three business days** after the date the lease is signed by each party to the lease. Additionally, if more than one tenant is a party to the lease, no later than three business days after the date the Landlord receives a written request for a copy of a lease from a tenant who has not already received one as required above, the Landlord must provide a copy to the requesting tenant. Landlord may provide the copy of the lease in: (1) a paper format; (2) an electronic format if requested by the tenant; or (3) by e-mail if the parties have communicated by e-mail regarding the lease. See § 92.024, Property Code, for more details.*

Produced with Lone Wolf Transactions (zipForm Edition) 231 Shearson Cr. Cambridge, Ontario, Canada N1T 1J5   www.lwolf.com

GF# _PLZ17223_

COUNTY: _Dallas_

## GENERAL WARRANTY DEED WITH VENDOR'S LIEN IN FAVOR OF THIRD PARTY

**NOTICE OF CONFIDENTIALITY: IF YOU ARE A NATURAL PERSON, YOU MAY REMOVE OR STRIKE ANY OR ALL OF THE FOLLOWING INFORMATION FROM ANY INSTRUMENT THAT TRANSFERS AN INTEREST IN REAL PROPERTY BEFORE IT IS FILED FOR RECORD IN THE PUBLIC RECORDS: YOUR SOCIAL SECURITY NUMBER OR YOUR DRIVER'S LICENSE NUMBER.**

| | | |
|---|---|---|
| THE STATE OF TEXAS | § | |
| | § | KNOW ALL MEN BY THESE PRESENTS: |
| COUNTY OF DALLAS | § | |

THAT **SUNITA MUHERJEE DBA DALLAS CREATIVE REMODELERS** (hereinafter called "GRANTORS" whether one or more), for and in consideration of the sum of TEN DOLLARS ($10.00) and other good and valuable considerations cash in hand paid by **ALEJANDRA GRIJALVA, A MARRIED WOMAN** whose address is **2705 HOLM DRIVE, GARLAND, TX 75041** (hereinafter called "GRANTEES" whether one or more), the receipt and sufficiency of which are hereby acknowledged and confessed, and the further consideration of the advancement and payment in cash of all or part of the purchase price hereof by Beneficiary at the special instance and request of Grantees under that certain note in the principal sum of **TWO HUNDRED TWENTY-FIVE THOUSAND EIGHT HUNDRED THIRTY-FOUR AND 00/100 DOLLARS ($225,834.00)** payable to the order of **MOUNTAIN WEST FINANCIAL, INC.** (hereinafter referred to as "BENEFICIARY") of even date herewith, said note bearing interest at the rate therein provided, principal and interest being due and payable in monthly installments as therein set out, and providing for attorney's fees and acceleration of maturity at the rate and in the events therein set forth, which note is secured by the Vendor's Lien herein reserved and is additionally secured by a Deed of Trust of even date herewith, executed by the Grantees herein to **ALLAN B. POLUNSKY**, Trustee, reference to which is hereby made for all purposes; and in consideration of the payment of the sum above mentioned by the Beneficiary above mentioned, Grantors hereby transfer, set over, assign and convey unto said Beneficiary and assigns, the Vendor's Lien and Superior Title herein retained and reserved against the property and premises herein conveyed, in the same manner and to the same extent as if said note had been executed in Grantors' favor and by said Grantors assigned to the Beneficiary without recourse; have GRANTED, SOLD and CONVEYED, and by these presents do GRANT, SELL and CONVEY unto the said Grantees herein, the following described property, together with all improvements thereon, to-wit:

**LOT 10., BLOCK 8 OF CLAREMONT PLACE ADDITION, AN ADDITION TO THE CITY OF GARLAND, TEXAS ACCORDING TO THE MAP OF SAID ADDITION RECORDED IN VOLUME 16, PAGE 39, MAP RECORDS OF DALLAS COUNTY, TEXAS.**

TO HAVE AND TO HOLD the above described premises, together with, all and singular, the rights and appurtenances thereto in any wise belonging, unto the said Grantees, their heirs and assigns forever. And Grantors do hereby bind themselves, their heirs, executors and administrators, to warrant and forever defend all and singular, the said premises unto the said Grantees, their heirs and assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof. Taxes for the current year have been prorated and are assumed by Grantees. This conveyance is made and accepted subject to any and all validly existing restrictions, mineral reservations and interests, conditions, covenants, easements, and rights of way, if any, applicable to and enforceable against the above

General Warranty Deed w/ Third Party
TX_GenWarDeed_ThirdParty
Powered By MortgageLaw

**Exhibit 4**

described property as now reflected by the records of the County Clerk in said County and State and to any applicable zoning laws or ordinances.

But it is expressly agreed and stipulated that the Vendor's Lien and the Superior Title are retained and reserved in favor of the payee in said note against the above described property, premises and improvements, until said note, and all interest thereon is fully paid according to the face and tenor, effect and reading thereof, when this deed shall become absolute.

When this deed is executed by one person, or when the Grantees is one person, the instrument shall read as though pertinent verbs and pronouns were changed to correspond, and when executed by or to a corporation the words "heirs, executors and administrators" or "heirs and assigns" shall be construed to mean "Successors and assigns".

Executed to be effective as of the ___9___ day of _November_ _2021_.

_____
**SUNITA MUHERJEE DBA DALLAS CREATIVE
REMODELERS**

THE STATE OF TEXAS
COUNTY OF ___Collin___

This instrument was acknowledged before me on _November 9, 2021_, by SUNITA MUHERJEE DBA DALLAS CREATIVE REMODELERS..

```
ANALISA L. FINK
Notary Public, State of Texas
Comm. Expires 09-12-2023
Notary ID 124680274
```

_____
Notary Public, State of Texas

RETURN TO:
ALEJANDRA GRIJALVA
2705 HOLM DRIVE
GARLAND, TX 75041

General Warranty Deed w/ Third Party
TX_GenWarDeed_ThirdParty
Powered By MortgageLaw

## Dallas County
## John F. Warren
### Dallas County Clerk

---

**Instrument Number:** 202100344049

eRecording - Real Property

Recorded On: November 16, 2021 04:01 PM                    Number of Pages: 3

---

**" Examined and Charged as Follows: "**

Total Recording: $30.00

---

**\*\*\*\*\*\*\*\*\*\*\* THIS PAGE IS PART OF THE INSTRUMENT \*\*\*\*\*\*\*\*\*\*\***
Any provision herein which restricts the Sale, Rental or use of the described REAL PROPERTY
because of color or race is invalid and unenforceable under federal law.

**File Information:**                                         **Record and Return To:**

Document Number:        202100344049              eRecording Partners

Receipt Number:          20211116000755             400 Second Avenue South

Recorded Date/Time:    November 16, 2021 04:01 PM

User:                         Kevin T                           Minneapolis MN 55401

Station:                      CC18

---



**STATE OF TEXAS**
**COUNTY OF DALLAS**

I hereby certify that this Instrument was FILED In the File Number sequence on the date/time
printed hereon, and was duly RECORDED in the Official Records of Dallas County, Texas.

John F. Warren
Dallas County Clerk
Dallas County, TX

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | **Case No. 23-41386** |
| **Sidhartha Mukherjee and** | § | |
| **Sunita Mukherjee** | § | |
| | § | **Chapter 13** |
| | § | |
| Debtors | § | |

## ORDER GRANTING CEASONS HOLDINGS, LLC'S MOTION TO
## DISMISS CASE WITH PREJUDICE TO REFILING

On September __, 2023, the Court considered the Motion to Dismiss Case with Prejudice to Refiling (the "**Motion**") filed by Ceasons Holdings, LLC ("**Movant**"). The Court finds that the Motion was properly served pursuant to the Federal and Local Rules of Bankruptcy Procedure and that it contained the appropriate negative notice language which directed any party opposed to the granting of the relief sought by the Motion to timely file a written response or the Motion would be deemed by the Court to be unopposed. The Court finds that no objection or other written response to the Motion has been timely filed by any party. Due to the failure of any party to file a timely written response, the allegations contained in the Motion stand unopposed and, therefore, the Court finds that good cause exists for the entry of the following order.

IT IS THEREFORE ORDERED that this case is hereby DISMISSED, WITH PREJUDICE to refiling a case under any Chapter of Title 11 U.S.C. for a period of six (6) months, and that all debts due and owing creditors as of this date are NOT DISCHARGED or affected in any manner by this Order.

1

2

3

4   UNITED STATES BANKRUPTCY COURT
    EASTERN DISTRICT OF TEXAS
5   SHERMAN DIVISION

6   IN RE:                                    CASE NO: 23-41386

    SIDHARTHA MUKHERJEE                        **DECLARATION OF MAILING**
7   SUNITA MUKHERJEE                           **CERTIFICATE OF SERVICE**
                                               Chapter: 13
8

9

10

11  On 9/14/2023, I did cause a copy of the following documents, described below,

12  MOTION TO DISMISS CASE WITH PREJUDICE TO REFILING

13

14

15

16

17

18  to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with
19  sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and
    incorporated as if fully set forth herein.

20  I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice.
    com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to
21  Fed.R.Bankr.P. 9001(9) and 2002(g)(4).  A copy of the declaration of service is attached hereto and incorporated as if
    fully set forth herein.

22  Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been
23  served electronically with the documents described herein per the ECF/PACER system.

    DATED: 9/14/2023

24                                        /s/ Howard Marc Spector
                                          Howard Marc Spector  785023
25

26                                        Spector & Cox, PLLC
                                          12770 Coit Rd Ste 850
27                                        Dallas, TX  75251-1329
                                          214 365 5377
                                          ahawkins@spectorcox.com
28

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

IN RE:

SIDHARTHA MUKHERJEE
SUNITA MUKHERJEE

CASE NO: 23-41386

**CERTIFICATE OF SERVICE**
**DECLARATION OF MAILING**

Chapter: 13

On 9/14/2023, a copy of the following documents, described below,

MOTION TO DISMISS CASE WITH PREJUDICE TO REFILING

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 9/14/2023

Jay S. Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Howard Marc Spector
Spector & Cox, PLLC
12770 Coit Rd Ste 850
Dallas, TX 75251-1329

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE do not require First Class USPS Mail Service.

CASE INFO

| LABEL MATRIX FOR LOCAL NOTICING 05404 CASE 23-41386 EASTERN DISTRICT OF TEXAS SHERMAN THU SEP 14 15-02-18 CDT 2023 | ALLY CAPITAL CO AIS PORTFOLIO SERVICES LL 4515 N SANTA FE AVE DEPT APS OKLAHOMA CITY OK 73118-7901 | ALLY FINANCIAL ATTN BANKRUPTCY PO BOX 130424 SAINT PAUL MN 55113-0004 |
|---|---|---|
| AMERICAN EXPRESS NATIONAL BANK CO BECKET AND LEE LLP PO BOX 3001 MALVERN PA 19355-0701 | AMEX PO BOX 981540 EL PASO TX 79998-1540 | RAHUL ATHALE CO JOYCE W LINDAUER JOYCE W LINDAUER ATTORNEY PLLC 1412 MAIN ST SUITE 500 DALLAS TX 75202-4042 |
| ATTORNEY GENERAL OF TEXAS BANKRUPTCY SECTION 400 SOUTH ZANG STE 1100 DALLAS TX 75208-6646 | BANK OF AMERICA PO BOX 982238 EL PASO TX 79998-2238 | LARRY R BOYD ABERNATHY ROEDER BOYD  HULLETT PC 1700 REDBUD BLVD SUITE 300 MCKINNEY TX 75069-3276 |
| COLLIN COUNTY TAX ASSESSORCOLLECTOR ABERNATHY ROEDER BOYD  HULLETT PC 1700 REDBUD BLVD SUITE 300 MCKINNEY TX 75069-3276 | COLLIN COUNTY TAX ASSESSORCOLLECTOR ABERNATHY ROEDER BOYD  HULLETT PC 1700 REDBUD BLVD SUITE 300 MCKINNEY TEXAS 75069-3276 | CEASONS HOLDINGS 16818 DALLAS PKWY 200 DALLAS TX 75248-1919 |
| CEASONS HOLDINGS LLC CO HOWARD MARC SPECTOR 12770 COIT RD ST 850 DALLAS TX 75251 | COLLIN COUNTY TAX ASSESSOR 2300 BLOOMDALE RD 2324 MCKINNEY TX 75071-8517 | CONNIE  JULIO QUINTANA CO JOHNATHAN WHARTON PO BOX 472027 FORT WORTH TX 76147-0227 |
| DISCOVER BANK DISCOVER PRODUCTS INC PO BOX 3025 NEW ALBANY OH 43054-3025 | CAREY D EBERT P O BOX 941166 PLANO TX 75094-1166 | EMILY M HAHN ABERNATHY ROEDER BOYD  HULLETT PC 1700 REDBUD BLVD STE 300 MCKINNEY TX 75069-3276 |
| INTERNAL REVENUE SERVICE IRS  SBSE INSOLVENCY AREA 10 1100 COMMERCE ST MC 5026 DAL DALLAS TX 75242-1100 | INTERNAL REVENUE SERVICE PO BOX 7346 PHILADELPHIA PA 19101-7346 | PRASHANT JADHAV CO JOYCE W LINDAUER JOYCE W LINDAUER ATTORNEY PLLC 1412 MAIN ST SUITE 500 DALLAS TX 75202-4042 |
| JOHN DAVENPORT 16818 DALLAS PARKWAY DALLAS TX 75248-1919 | JUJAAR SINGH CO SHAHID MANZOOR ESQ 3017 DOUGLAS BLVD SUITE 104 ROSEVILLE CA 95661-3837 | LAW OFFICE OF JOHNATHAN WHARTON JOHNATHAN WHARTON PO BOX 472027 FORT WORTH TX 76147-0227 |
| LEE LAW FIRM PLLC ATTN SUSAN HUDSON 8701 BEDFORD EULESS RD 510 HURST TX 76053-3874 | JOYCE W LINDAUER JOYCE W LINDAUER ATTORNEY 1412 MAIN STREET SUITE 500 DALLAS TX 75202-4042 | LINEBARGER GOGGAN BLAIR ET AL 2323 BRYAN 1600 DALLAS TX 75201-2637 |

PAUL M LOPEZ
ABERNATHY ROEDER BOYD  HULLETT PC
1700 REDBUD BLVD
STE 300
MCKINNEY TX 75069-3276

SESHU MADABUSHI
CO JOYCE W LINDAUER
JOYCE W LINDAUER ATTORNEY PLLC
1412 MAIN ST SUITE 500
DALLAS TX 75202-4042

MANZOOR LAW FIRM INC
3017 DOUGLAS BLVD 104
ROSEVILLE CA 95661-3837


MANZOOR LAW FIRM INC
SHAHID MANZOOR ESQ
3017 DOUGLAS BLVD SUITE 104
ROSEVILLE CA 95661-3837

MERCEDES BENZ FINANCIAL
PO BOX 961
ROANOKE TX 76262-0961

MERCEDESBENZ FINANCIAL SERVICES USA LL
CO BK SERVICING LLC
PO BOX 131265
ROSEVILLE MN 55113-0011


                                        DEBTOR
JAMES M MORRISON
LEE LAW FIRM PLLC
8701 W BEDFORD EULESS RD
SUITE 510
HURST TX 76053-3874

SIDHARTHA MUKHERJEE
3905 KITE MEADOW DRIVE
PLANO TX 75074-7757

SUNITA MUKHERJEE
3905 KITE MEADOW DRIVE
PLANO TX 75074-7757


JAIESH NARSIAN
CO JOYCE W LINDAUER
JOYCE W LINDAUER ATTORNEY PLLC
1412 MAIN STREET SUITE 500
DALLAS TX 75202-4042

PNC BANK RETAIL LENDING
P O BOX 94982
CLEVELAND OH 44101-4982

PLANO ISD
CO PERDUE BRANDON FIELDER ET AL
1919 S SHILOH ROAD SUITE 640 LB 40
GARLAND TX 75042-8234


GARLAND ISD
ATTN CO PERDUE BRANDON ET AL
1919 S SHILOH ROAD
SUITE 640 LB 40
GARLAND TX 75042-8234

HARPREET SINGH
CO JOYCE W LINDAUER
JOYCE W LINDAUER ATTORNEY PLLC
1412 MAIN ST SUITE 500
DALLAS TX 75202-4042

PRABHA SINGH
CO JOYCE W LINDAUER
JOYCE W LINDAUER ATTORNEY PLLC
1412 MAIN ST SUITE 500
DALLAS TX 75202-4042


HOWARD MARC SPECTOR
SPECTOR  COX PLLC
12770 COIT RD
SUITE 850
DALLAS TX 75251-1364

TEXAS COMPTROLLER OF PUBLIC ACCOUNTS
REVENUE ACCOUNTING DIV  BANKRUPTCY
SECTION
PO BOX 13528
AUSTIN TX 78711-3528

THDCBNA
PO BOX 6497
SIOUX FALLS SD 57117-6497


TEXAS ALCOHOL BEVERAGE COMMISSION
LICENSES AND PERMITS DIVISION
PO BOX 13127
AUSTIN TX 78711-3127

TEXAS EMPLOYMENT COMMISSION
TEC BUILDING  BANKRUPTCY
101 E 15TH STREET
AUSTIN TX 78778-0001

TOYOTA FINANCIAL SERVICES
6565 HEADQUARTERS DR
PLANO TX 75024-5965


TOYOTA MOTOR CREDIT CORPORATION
PO BOX 9013
ADDISON TEXAS 75001-9013

TRUIST BANK
PO BOX 1847
WILSON NC 27894-1847

TRUIST BANK SUPPORT SERVICES
PO BOX 85092
RICHMOND VA 23285-5092


US ATTORNEY GENERAL
DEPARTMENT OF JUSTICE
MAIN JUSTICE BUILDING
10TH  CONSTITUTION AVE NW
WASHINGTON DC 20530-0001

US SMALL BUSINESS ADMINISTRATION
409 3RD ST SW
WASHINGTON DC 20416-0002

US SMALL BUSINESS ADMINISTRATION
PO BOX 830794
BIRMINGHAM AL 35283-0794

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

US TRUSTEE
OFFICE OF THE US TRUSTEE
110 N COLLEGE AVE
SUITE 300
TYLER TX 75702-7231

UNITED STATES ATTORNEY
110 NORTH COLLEGE AVE 700
TYLER TX 75702-0204

UNITED STATES ATTORNEY GENERAL
MAIN JUSTICE BUILDING
10TH AND CONSTITUTION AVE 5111
WASHINGTON DC 20530-0001

UNITED STATES TRUSTEES OFFICE
110 NORTH COLLEGE AVE 300
TYLER TX 75702-7231

ZWICKER  ASSOCIATES PC
ANTHONY CHERIAN
17950 PRESTON ROAD 750
DALLAS TX 75252-5665