Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Facsimile: (972) 503-4034
ATTORNEYS FOR PLAINTIFF

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **SIDDHARTHA MUKHERJEE and** | § | **CASE NO. 23-41386** |
| **SUNITA MUKHERJEE** | § | **Chapter 7** |
| | § | |
| | § | |
| **Debtor.** | § | |

_____

| | | |
|---|---|---|
| **JPRS, LLC, SHARAD PATEL,** | § | |
| **HARPREET SINGH, PRABHA SINGH,** | § | |
| **and JUJAAR SINGH** | § | |
| **Plaintiffs,** | § | |
| | § | |
| **v.** | § | **Adversary No. _____** |
| | § | |
| **SIDDHARTHA MUKHERJEE and,** | § | |
| **SUNITA MUKHERJEE** | § | |
| **Defendants.** | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

**TO THE HONORABLE UNITED STATES BANKRUPTCY COURT:**

**COME NOW** JPRS, LLC, Sharad Patel, Harpreet Singh, Prabha Singh, and Jujaar Singh (collectively, the "Plaintiffs"), Creditors in the above-styled and entitled bankruptcy case and Plaintiffs in the above-styled and numbered Adversary Proceeding, and files this Original Complaint Objecting to Discharge, or in the alternative, Dischargeability of Debt ("Complaint") against Siddhartha Mukherjee and Sunita Mukherjee (collectively, the "Defendants" or "Mukherjees").  In support thereof, Plaintiffs would respectfully show the Court as follows:

## I.    PARTIES

1.    Plaintiff JPRS, LLC is a Texas limited liability company and creditor in this bankruptcy case.

2.    Plaintiff Sharad Patel is an individual residing in Texas and creditor in this bankruptcy case.

3.    Plaintiff Harpreet Singh is an individual residing in Texas and creditor in this bankruptcy case.

4.    Plaintiff Prabha Singh is an individual residing in Texas and creditor in this bankruptcy case.

5.    Plaintiff Jujaar Singh is an individual residing in Texas and creditor in this bankruptcy case.

6.    Defendant Siddhartha Mukherjee ("Siddhartha") is an individual and may be served with citation at his residence at 3905 Kite Meadow Drive, Plano, Texas 75024.

7.    Defendant Sunita Mukherjee ("Sunita") is an individual and may be served with citation at her residence at 3905 Kite Meadow Drive, Plano, Texas 75024.

## II.    JURISDICTION AND VENUE

8.    This Court has jurisdiction over the subject matter of this adversary proceeding under 28 U.S.C. §§ 1334(b) and 157(a)-(b), and Fed. R. Bankr. P. 7001(1), (2), (4) and (6).

9.    Venue is proper in this Court pursuant to 28 U.S.C. § 1408.

10.    This Adversary Proceeding is a core proceeding pursuant to 28 U.S.C. §157(a)-(b).

11.    This Adversary Proceeding relates to *In re: Siddhartha Mukherjee and Sunita Mukherjee*, Case No. 23-41386-btr, a Chapter 7 bankruptcy case pending in the United States Bankruptcy Court for the Eastern District of Texas, Sherman Division.

### III.  PROCEDURAL HISTORY

12.      On or about July 13, 2023, the Mukherjees filed a Chapter 13 bankruptcy case.

13.      The Mukherjees failed to appear at their first meeting of creditors on September 14, 2023.

14.      Thereafter, the Chapter 13 Trustee filed a motion to dismiss the case due to the Debtors failure to appear at the meeting of creditors and failing to make their chapter 13 payments.

15.      On September 29, 2023, Jaiesh Narsian, Seshu Madabushi, Rahul Athale, Prashant Jadhav, Harpreet Singh, Prabha Singh, Jujaar Singh, Terry Parvaga, Jasbir Kaur Parvaga and Dipak Pravin filed a motion to convert the case to chapter 7.  The Debtors further failed to appear at a hearing on the motion to convert on October 19, 2023.

16.      After motion and hearing, the bankruptcy case was converted to a Chapter 7 on October 31, 2023.  A copy of the conversion order is attached hereto and incorporated by reference herein as **Exhibit "1."**

17.      Among other conclusions, the Court found:

a)      The Debtors have concealed cash or other assets which have not been disclosed or properly accounted for in their Schedules and Statement of Financial Affairs, and any amendments thereto.

b)      The Debtors failed to disclose all of their creditors in their Schedules and Statement of Financial Affairs, and any amendments thereto.  Debtors further failed to provide sufficient notice of this bankruptcy proceeding to their creditors due to this omission.

18.      Debtors did not appeal this conversion order.

19.     Due to the delay caused by the continuance of the meeting of creditors, the Office

of the U.S. Trustee filed a motion and obtained an extension of the bar date for filing complaints

under 11 U.S.C. §§ 523 and 727 to April 30, 2024.

## IV.     FACTS

20.     The Mukherjees approached Plaintiffs and pitched a business proposition in which

Plaintiffs would lend money to one of Defendants companies, Sri Laxmi Global Investment ("Sri

Laxmi Global") and also become a partial owner of Dallas Creative Remodelers ("Dallas

Remodelers"), a different company owned by the Mukherjees.

21.     **Harpreet and Prabha Singh.**  Siddhartha approached Harpreet and Prabha Singh

in 2019 and explained an opportunity for investment with working capital financing for

reconstruction work through his company Dallas Remodelers.  Siddhartha advised that Dallas

Remodelers was awarded a contract by Dallas Housing Authority ("DHA").

22.     Siddhartha explained that the DHA project was awarded to Dallas Remodelers

because Dallas Remodelers was a preferred vendor and had already done work for DHA.  As a

result, Dallas Remodelers was not subject to the traditional project bidding process since there was

a backlog of work to be finished – hence DHA was assigning work to preferred vendors.

23.     The Mukherjees informed, and provided documentation, that Dallas Creative

Remodelers was awarded bids with the DHA totaling just under $3 million dollars.  The work

included replacing windows, flooring, and a roof for multiple DHA properties.  When Plaintiffs

Harpreet and Prabha Singh requested updates on these projects, the Mukherjees told Plaintiffs that

COVID was delaying the start of these projects.  Plaintiffs have learned that these bids were

fraudulent and no such bid or project exists with DHA.

24.     To bolster their fraudulent representations, Siddhartha provided two letters from a

person purported to be an employee of the DHA providing pertinent information to a project in

which Dallas Remodelers was involved dated December 5, 2019 and December 17, 2019.  These letters were intended to verify the existence of this project, but were forgeries by the Defendants. Upon information and belief, the individual whose signature appears on the letters, Marvin S. Suttice, was no longer employed by the DHA at the time the letter was dated and provided to the Plaintiff.   A true and correct copy of these December 2019 letters are attached hereto and incorporated by reference herein as **Exhibit "2."**

26. Harpreet and Prabha Singh entered into an agreement with Dallas Creative Remodelers in which Harpreet and Prabha Singh would receive a return on their loan to Dallas Creative Remodelers.  Defendants specifically directed Harpreet and Prabha Singh to deposit these funds into Sri Laxmi Global's bank account.

26. Harpreet and Prabha Singh transferred $204,000.00 to Sri Laxmi Global.  Sri Laxmi Global and Dallas Creative Remodelers failed to uphold the repayment terms in many aspects, but substantially failed to pay Harpreet and Prabha Singh their guaranteed interest.  Although a few payments were made, Sri Laxmi Global and Dallas Creative Remodelers attempted to make additional payments from an account that lacked sufficient funds causing the checks to bounce and not clear its bank account.

27. Defendants were both aware of the fraudulent disclosures used to defraud Plaintiffs Harpreet and Prabha Singh with their related companies.

28. **Jujaar Singh.** Siddhartha approached Jujaar Singh in February 2020 and explained an opportunity for investment with working capital financing for reconstruction work through his company Dallas Remodelers.  Siddhartha advised that Dallas Remodelers was awarded a contract by DHA.

29.     Siddhartha explained that the DHA project was awarded to Dallas Remodelers because Dallas Remodelers was a preferred vendor and had already done work for DHA.  As a result, Dallas Remodelers was not subject to the traditional project bidding process since there was a backlog of work to be finished – hence DHA was assigning work to preferred vendors.

30.     The Mukherjees informed, and provided documentation, that Dallas Creative Remodelers was awarded bids with the DHA totaling just under $3 million dollars. The work included replacing windows, flooring, and a roof for multiple DHA properties.  When Plaintiff Jujaar Singh requested updates on these projects, the Mukherjees told Plaintiff that COVID was delaying the start of these projects.  Plaintiff has learned that these bids were fraudulent and no such bid or project exists with DHA.

31.     Jujaar Singh entered into an agreement with Dallas Creative Remodelers in which Jujaar Singh would receive a guaranteed 15% interest return on its loan to Dallas Creative Remodelers issued by Sri Laxmi Global to Jujaar Singh.  A true and correct copy of this Investment Contract is attached hereto and incorporated by reference herein as **Exhibit "3."**  Defendants specifically directed Jujaar Singh to deposit these funds into Sri Laxmi Global's bank account.

32.     On February 22, 2020, $100,000.00 was transferred to Sri Laxmi Global on behalf of Jujaar Singh.  Sri Laxmi Global and Dallas Creative Remodelers failed to uphold the repayment terms in many aspects, but substantially failed to pay Jujaar Singh his guaranteed interest. Although a few payments were made, Sri Laxmi Global and Dallas Creative Remodelers attempted to make additional payments from an account that lacked sufficient funds causing the checks to bounce and not clear its bank account.

33.     Defendants were both aware of the fraudulent disclosures used to defraud Plaintiff Jujaar Singh with their related companies.

34.    **Sharad Patel.**  Siddhartha approached Sharad Patel in 2022 and explained an opportunity for investment with working capital financing for reconstruction work through his company Dallas Remodelers.  Siddhartha advised that Dallas Remodelers was awarded a contract by DHA.

35.    Siddhartha explained that the DHA project was awarded to Dallas Remodelers because Dallas Remodelers was a preferred vendor and had already done work for DHA.  As a result, Dallas Remodelers was not subject to the traditional project bidding process since there was a backlog of work to be finished – hence DHA was assigning work to preferred vendors.

36.    The Mukherjees informed, and provided documentation, that Dallas Creative Remodelers was awarded bids with the DHA totaling just under $3 million dollars.  The work included replacing windows, flooring, and a roof for multiple DHA properties.  When Plaintiff Sharad Patel requested updates on these projects, the Mukherjees told Plaintiff that COVID was delaying the start of these projects.  Plaintiff has learned that these bids were fraudulent and no such bid or project exists with DHA.

37.    To bolster their fraudulent representations, Siddhartha provided a letter from a person purported to be an employee of the DHA providing pertinent information to a project in which Dallas Creative Remodelers was involved dated March 31, 2022.  This letter was intended to verify the existence of this project, but was a forgery by the Defendants.  Upon information and belief, the individual whose signature appears on the letters, Marvin S. Suttice, was no longer employed by the DHA at the time the letter was dated and provided to the Plaintiff.  A true and correct copy of the March 31, 2022 letter is attached hereto and incorporated by reference herein as **Exhibit "4."**

38. Sharad Patel entered into an agreement with Dallas Creative Remodelers in which Sharad Patel would receive a guaranteed 12% interest return on its loan to Dallas Creative Remodelers issued by Sri Laxmi Global to Sharad Patel. A true and correct copy of this Investment Contract is attached hereto and incorporated by reference herein as **Exhibit "5."** Defendants specifically directed Sharad Patel to deposit these funds into Sri Laxmi Global's bank account.

39. On or about April 7, 2022, $30,000.00 was transferred to Sri Laxmi Global on behalf of Sharad Patel. Sri Laxmi Global and Dallas Creative Remodelers failed to uphold the repayment terms in many aspects, but substantially failed to pay Sharad Patel his guaranteed interest. Although a few payments were made, Sri Laxmi Global and Dallas Creative Remodelers attempted to make additional payments from an account that lacked sufficient funds causing the checks to bounce and not clear its bank account.

40. Defendants were both aware of the fraudulent disclosures used to defraud Plaintiff Sharad Patel with their related companies.

41. **<u>JPRS, LLC.</u>** Siddhartha approached JPRS, LLC in October 2022 and explained an opportunity for investment with working capital financing for reconstruction work through his company Dallas Remodelers. Siddhartha advised that Dallas Remodelers was awarded a contract by DHA.

42. Siddhartha explained that the DHA project was awarded to Dallas Remodelers because Dallas Remodelers was a preferred vendor and had already done work for DHA. As a result, Dallas Remodelers was not subject to the traditional project bidding process since there was a backlog of work to be finished – hence DHA was assigning work to preferred vendors.

43. The Mukherjees informed, and provided documentation, that Dallas Creative Remodelers was awarded bids with the DHA totaling just under $3 million dollars. The work

included replacing windows, flooring, and a roof for multiple DHA properties.  When Plaintiff

JPRS, LLC requested updates on these projects, the Mukherjees told Plaintiff that COVID was

delaying the start of these projects.  Plaintiff has learned that these bids were fraudulent and no

such bid or project exists with DHA.

44.     To bolster their fraudulent representations, Siddhartha provided a letter from a

person purported to be an employee of the DHA providing pertinent information to a project in

which Dallas Creative Remodelers was involved dated October 21, 2022.  The letter was intended

to verify the existence of this project, but was a forgery by the Defendants.  Upon information and

belief, the individual whose signature appears on the letters, Marvin S. Suttice, was no longer

employed by the DHA at the time the letter was dated and provided to the Plaintiff.  A true and

correct copy of this October 21, 2022 letter is attached hereto and incorporated by reference herein

as **Exhibit "6."**

45.     JPRS, LLC entered into an agreement with Dallas Creative Remodelers in which

JPRS, LLC would receive a guaranteed 40% interest return on its loan to Dallas Creative

Remodelers for a total of $226,800.00 issued by Sri Laxmi Global to the Plaintiffs.  A true and

correct copy of this Investment Contract is attached hereto and incorporated by reference herein

as **Exhibit "7."**  Defendants specifically directed JPRS, LLC to deposit these funds into Sri Laxmi

Global's bank account.

46.     Between October 27, 2022 and November 15, 2022, $128,400.00 was transferred

to Sri Laxmi Global on behalf of JPRS, LLC.  Sri Laxmi Global and Dallas Creative Remodelers

failed to uphold the repayment terms in many aspects, but substantially failed to pay JPRS, LLC

its guaranteed interest.  Although a few payments were made, Sri Laxmi Global and Dallas

Creative Remodelers attempted to make additional payments from an account that lacked sufficient funds causing the checks to bounce and not clear its bank account.

47.     Defendants were both aware of the fraudulent disclosures used to defraud Plaintiff JPRS, LLC with their related companies.

48.     To continue to keep Plaintiffs in this roller coaster scheme, the Mukherjees occasionally paid Plaintiffs a small portion to make them believe their investment would turn a profit.

49.     The Mukherjees conned Plaintiffs into loaning funds to Sri Laxmi Global agreement entering in the Dallas Creative Remodelers Contract by using fraudulent documentation, statements, forged bank statements and representations for both companies. The Mukherjees failed to uphold the terms of the certificate of deposits and Dallas Creative Remodelers Contract signed between the parties.

50.     Defendants made fraudulent misrepresentations to Plaintiffs. Defendants made representations related to interest payments and guaranteed returns the Plaintiffs would receive, scheduled construction contracts/bids that were awarded, amongst others. These representations were made with the specific intent that Plaintiffs rely upon them, which they did so rely. Such reliance caused damages to Plaintiffs.

51.     Defendants made numerous representations to Plaintiffs to induce them into investing into the ownership of Sri Laxmi Global and Dallas Creative Remodelers. Defendants made these representations knowing that they could not and would not pay Plaintiffs the contractual interest on their initial investments, knowing that Defendants did not have construction contracts with DHA or any other entities, provided forged documentation and insufficient funds

to Plaintiffs.  Plaintiffs reasonably relied upon these misrepresentations when making the decision to invest into these companies.

52.     The Defendants failed to list Plaintiffs as creditors in their bankruptcy filing.

53.     Defendants intentionally did not list this debt in hopes to defraud Plaintiffs and continue soliciting funds from unsuspecting parties.

54.     Upon information and belief, the Defendants own expensive household goods that have not been disclosed in their Schedules or any amendments thereto.

55.     The Defendants failed to list the millions of dollars they have taken from various persons who now consider themselves victims of the Debtors.

56.     Upon information and belief, the Defendants failed to disclose material information, among other items, required for this Court to administer the case as follows:

    a)     Defendants failed to disclose their loan from Ceasons Holdings LLC;

    b)     Defendants failed to disclose the discharge of the lien of the prior mortgagee, Wildcat Lending Fund One L.P. against their Garland property;

    c)     Defendants misrepresented which property was their homestead;

    d)     Defendants failed to disclose the sale of their Garland property;

    e)     Defendants failed to disclose the rental income received from the lease of their Plano property.

57.     Upon information and belief, the Chapter 7 Trustee, Linda S. Payne, requested information regarding these transfers and assets from the Defendants.  To date, Defendants have not fully complied with these requests.

58.    The Defendants have falsified their bankruptcy filings and falsified loan documents.  Plaintiffs believe Defendants used the same *modus operandi* to defraud countless creditors.

## V.    CAUSES OF ACTION

### Count One:    False Oath under 11 U.S.C. § 727(a)(4)(A)

59.    Plaintiffs incorporate by reference the allegations set forth above as if the same were fully set forth herein.

60.    The Bankruptcy Code provides that the Court shall grant the debtor a discharge unless "the debtor knowingly and fraudulently, in or in connection with the case . . . made a false oath or account."  11 U.S.C. §727(a)(4)(A).  "[T]he existence of duty is a question of law for the court to decide from the facts surrounding the occurrence in question."  *Greater Houston Transp. Co. v. Phillips*, 801 S.W.2d 523, 525 (Tex. 1990), citing *Otis Eng'g Corp. v. Clark*, 668 S.W.2d 307, 312 (Tex. 1983).

61.    To prevail under section 727(a)(4)(A), an objecting plaintiff must prove by a preponderance of the evidence "that (1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case."  *Judgment Factors, L.L.C. v. Packer (In re Packer)*, 816 F.3d 87, 94 (5th Cir. 2016).

62.    A false statement or omission from a debtor's schedules or statement of financial affairs may constitute a false oath for purposes of section 727(a)(2)(A).  *See Beaubouef v. Beaubouef (In re Beaubouef)*, 966 F.2d 174, 178 (5th Cir. 1992).  Disclosure of this information is necessary to the transparency of the bankruptcy process because it may lead to the discovery of other assets.  *Id.* at 177-78.  "Full disclosure of assets and liabilities in the schedules…is essential"

to ensure that the chapter 7 trustee and creditors have '"adequate information…without need for investigation to determine whether the information provided is true.'"  *Id.* at 179 (citations omitted).

63.     The Defendants failed to list Plaintiffs as creditors in their bankruptcy filing.

64.     Defendants intentionally did not list this debt in hopes of defrauding Plaintiffs and continue soliciting funds from unsuspecting parties.

65.     Upon information and belief, the Defendants own expensive household goods that have not been disclosed in their Schedules or any amendments thereto.

66.     The Defendants failed to list the millions of dollars they have taken from various persons who now consider themselves victims of the Debtors.

67.     Upon information and belief, the Defendants failed to disclose material information, among other items, required for this Court to administer the case as follows:

a)      Defendants failed to disclose their loan from Ceasons Holdings LLC;

b)      Defendants failed to disclose the discharge of the lien of the prior mortgagee, Wildcat Lending Fund One L.P. against their Garland property;

c)      Defendants misrepresented which property was their homestead;

d)      Defendants failed to disclose the sale of their Garland property;

e)      Defendants failed to disclose the rental income received from the lease of their Plano property.

68.     Accordingly, the Mukherjees' discharge should be denied for false oath under section 727(a)(4)(A).

**Count Two:   Concealment of Assets under 11 U.S.C. § 727(a)(2)**

69.     Plaintiffs incorporate by reference the allegations set forth above as if the same

were fully set forth herein.

70.     Section 727(a)(2) provides that the Court may deny a discharge if the debtor has:

(2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
      (A) property of the debtor, within one year before the date of the filing of the petition; or
      (B) property of the estate, after the date of the filing of the petition.

11 U. S.C. § 727(a)(2).

71.     To deny discharge under section 727(a)(2), the plaintiff must prove four elements: (1) a transfer of property; (2) belonging to the debtor or the bankruptcy estate; (3) within one year of the filing of the petition; (4) with intent to hinder, delay, or defraud a creditor or officer of the estate." *In re Chastant*, 873 F.2d 89, 91 (5th Cir. 1989) (citing *In re Reed*, 18 B.R. 462 (Bankr. E.D. Tenn. 1982)).

72.     In examining intent under section 727(a)(2), courts look to certain "badges of fraud" which "tend to evidence a transfer made with intent to defraud." *Soza v. Hill (In re Soza)*, 542 F.3d 1060, 1067 (5th Cir. 2008).   These badges include 1) absence or inadequate consideration; 2) whether the debtor has close or familiar relationship with transferee(s); 3) whether debtor retained possession, benefit, or use of transferred property; 4) the debtor's financial condition before and after the questioned transaction; 5) the overall pattern or course of conduct after "incurring the debt, onset of financial difficulties, or pendency or threat of suits by creditors" and 6) the general timeline of events. *Id.*, citing *Chastant v. Chastant (In re Chastant)*, 873 F.2d 89, 91 (5th Cir. 1989).

73.     The Mukherjees hold bank accounts under their business names.  They did not disclose this property on Schedule A/B.

74.     Plaintiffs deposited funds into Defendants' business bank accounts as a direct result

of Defendants' fraudulent acts.  Defendants regularly used these business accounts for their personal benefit once they were able to scheme further funds from innocent investors.

75.    The concealment of these assets continued through the year before the Petition Date and after.  "[T]he concealment of an interest in an asset that continues, with the requisite intent, into the year before the bankruptcy constitutes a form of concealment which occurs within the year before bankruptcy," and therefore "within the reach of section 727(a)(2)(A)."  *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 554-55 (5th Cir. 1987).

76.    In the year before the Petition Date, the Mukherjees exercised control over the business bank accounts and directed Plaintiffs to deposit funds into same.  They did not disclose this property on Schedule A/B.  The Mukherjees continued their control and concealment by failing to disclose the account in a subsequent amendment to Schedule A/B.

77.    Accordingly, the Mukherjees' discharge should be denied for concealment of assets with intent to hinder, delay, or defraud creditors under sections 727(a)(2)(A) and (B).

## Count Three: Failure to Maintain Books and Records under 11 U.S.C. § 727(a)(3)

78.    Plaintiffs incorporate by reference the allegations set forth above as if the same were fully set forth herein.

79.    The Bankruptcy Code provides that the Court may deny a debtor's chapter 7 discharge if the debtor "has concealed…or failed to keep or preserve any recorded information…from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. § 727(a)(3).

80.    The objecting part under section 727(a)(3) "need not prove fraudulent intent [with regard to a failure to keep and preserve records], but only that the debtor unreasonably failed to

maintain sufficient records to adequately ascertain his financial situation." *Neary v. Hughes (In re Hughes)*, 353 B.R. 486, 501 (Bankr. N.D. Tex. 2006) (denying discharge of debtor who operated on a cash-only basis under section 727(a)(3)), aff'd, 386 B.R. 624 (N.D. Tex. 2008), aff'd, 309 Fed. Appx. 841 (5th Cir. 2009)(citations omitted).

81.     The Mukherjees have received over $462,400.00 and $158,400.00 in the last year from Plaintiffs due to their fraudulent acts.  While the Mukherjees have provided some personal and business bank statements, they have not provided all of the requested statements, supporting DHA project documentation, or other further business records to support the allegations told to Plaintiffs to secure investments.  The Mukherjees' sworn testimony on income and expenses cannot be verified without such records.

82.     The Mukherjees have failed to keep or preserve sufficient recorded information from which their financial condition or business transactions might be ascertained.

83.     Accordingly, the Mukherjees' discharge should be denied for failure to maintain adequate books and records under section 727(a)(3).

### Count Four:  Failure to Cooperate with Chapter 7 Trustee under 11 U.S.C. § 727(a)(4)(D)

84.     Plaintiffs incorporate by reference the allegations set forth above as if the same were fully set forth herein.

85.     The Bankruptcy Code provides that the Court shall deny a debtor's discharge if that debtor has withheld from the chapter 7 trustee "any recorded information…related to the debtor's property or financial affairs."  11 U.S.C. § 727(a)(4)(D).

86.     The purpose of section 727(a)(4) is to "ensure that debtors provide all relevant information without the need for lengthy examination and investigations into the affairs of the estate."  *Benchmark Bank v. Crumley (In re Crumley)*, 428 B.R. 349, 367-68 (Bankr. N.D. Tex.

2010).

87.     The Mukherjees knowingly and fraudulently withheld information from the Chapter 7Trustee, Creditors, and United States Trustee.  The Chapter 7 Trustee asked for documents immediately after the continued meeting of creditors.  The Defendants knew from the Trustee's questions at this meeting that the Trustee wanted documentation related to business transactions and related assets, which in turn related to the Mukherjee's financial affairs.

88.     Accordingly, the Mukherjees' discharge should be denied for knowingly and fraudulently withholding information from the Trustee under section 727(a)(4)(D).

### Count Five:   Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(A)

89.     Plaintiffs incorporate by reference the allegations set forth above as if the same were fully set forth herein.

90.     11 U.S.C. § 523 (a)(2)(A) provides, in relevant part, that:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-…(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-(A) false pretenses, a false representation or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.

91.     The Defendants are liable to the Plaintiffs for a debt obtained by actual fraud other than a statement respecting the debtor's or an insider's financial condition.

92.     Defendants made fraudulent misrepresentations to Plaintiffs.  Defendants made representations related to interest payments the Plaintiffs would receive, scheduled construction contracts/bids that were awarded, amongst others.  These representations were made with the specific intent that Plaintiffs rely upon them, which they did so rely.  Such reliance caused damages to Plaintiffs.

93.     Defendants made numerous representations to Plaintiffs to induce them to loan

money to Sri Laxmi Global and investing into the ownership of Dallas Creative Remodelers. Defendants made these representations knowing that they could not and would not pay Plaintiffs the contractual interest on their initial investments, knowing that Defendants did not have construction contracts with DHA or any other entities, provided forged documentation and insufficient funds to Plaintiffs. Plaintiffs reasonably relied upon these misrepresentations when making the decision to invest in these companies.

94.    Accordingly, discharge of the Plaintiffs' debt against the Defendants is barred by section 523(a)(2)(A) of the Bankruptcy Code.

**Count Six:    Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(2)(B)**

95.    Plaintiffs incorporate by reference the allegations set forth above as if the same were fully set forth herein.

96.    11 U.S.C. § 523(a)(2)(B) provides, in relevant part, that:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-…(2) for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by-…(B) use of a statement in writing- (i) that is materially false; (ii) respecting the debtor's or an insider's financial condition; (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive.

97.    The acts committed by the Defendants, including transmitting forged screenshots of his company's bank account at Bank of America which was materially false respecting his financial condition, to the Plaintiffs to whom he owned a debt with the intent to deceive and to which the Plaintiffs' reasonably relied.

98.    Accordingly, discharge of the Plaintiffs' debt against the Defendants is barred by section 523(a)(2)(B) of the Bankruptcy Code.

**Count Seven: Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(4)**

99.     Plaintiffs incorporate by reference the allegations set forth above as if the same were fully set forth herein.

100.     11 U.S.C. § 523(a)(4) provides, in relevant part, that:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-…(4) for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny.

101.     The acts committed by the Defendants, including transmitting forged screenshots of his company's bank account at Bank of America which was materially false respecting his financial condition, to the Plaintiffs to whom he owned a debt with the intent to deceive and to which the Plaintiffs' reasonably relied constitute fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny and, by reason of the foregoing, the debt should be determined to be non-dischargeable.

102.     Accordingly, discharge of the Plaintiffs' debt against the Defendants is barred by section 523(a)(2)(B) of the Bankruptcy Code.

**Count Eight:  Non-Dischargeability of Debt Pursuant to 11 U.S.C. § 523(a)(6)**

103.     Plaintiffs incorporate by reference the allegations set forth above as if the same were fully set forth herein.

104.     11 U.S.C. § 523(a)(6) provides, in relevant part, that:

> A discharge under section 727, 1141, 1228(a), 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt-…(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

105.     The acts committed by the Defendants, including transmitting forged screenshots of his company's bank account at Bank of America which was materially false respecting his financial condition, to the Plaintiffs to whom he owned a debt with the intent to deceive and to

which the Plaintiff's reasonably relied constitute willful and malicious injury by the debtor to another entity or to the property of another entity

106.    Accordingly, discharge of the Plaintiffs' debt against the Defendants is barred by section 523(a)(2)(B) of the Bankruptcy Code.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiffs JPRS, LLC, Sharad Patel, Harpreet Singh, Prabha Singh, and Jujaar Singh request that the Court: (1) a discharge under 11 U.S.C. §§§§ 727(a)(4)(A), (a)(2), (a)(3), and (a)(4)(D); (2) in the alternative, enter Judgment determining that the debts owed to Plaintiffs JPRS, LLC, Sharad Patel, Harpreet Singh, and Prabha Singh by Debtors Siddhartha Mukherjee and Sunita Mukherjee are non-dischargeable under 11 U.S.C. §§§§ 523(a)(2)(A), (a)(2)(B), (a)(4) and (a)(6); (3) award reasonable attorney's fees and costs for this Complaint to the extent permitted by law; and (4) grant such other and further relief, both at law and in equity, to which Plaintiffs show themselves to be justly entitled.

DATED: April 30, 2024.

Respectfully submitted,

*/s/ Joyce W. Lindauer*
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
(972) 503-4033
(972) 503-4034 (Fax)
**Attorneys for Plaintiffs**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **SIDHARTHA MUKHERJEE and** | § | **CASE NO. 23-41386-btr** |
| **SUNITA MUKHERJEE,** | § | **Chapter 13** |
| | § | |
| Debtors. | § | |

**ORDER GRANTING MOTION TO CONVERT
CHAPTER 13 CASE TO CHAPTER 7**

CAME ON FOR CONSIDERATION BY THE COURT the Motion to Convert Chapter 13 Case to Chapter 7 [Dkt. No. 29] filed by Jaiesh Narsian, Seshu Madabushi, Rahul Athale, Prashant Jadhav, Harpreet Singh, Prabha Singh and Dipak Pravin, creditors and parties-in-interest in the above-styled and numbered bankruptcy case ("Creditors" or "Movants"), the Court having reviewed the pleadings, evidence and argument of counsel, finds good cause to grant the Motion. THE COURT HEREBY FINDS:

    A.    On July 31, 2023 (the "Petition Date"), the Debtors filed a voluntary petition for relief under Chapter 13 of the Bankruptcy Code.

    B.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

    C.    The Debtors have concealed cash or other assets which have not been disclosed or properly accounted for in their Schedules and Statement of Financial Affairs, and any amendments thereto.

    D.    The Debtors failed to disclose all of their creditors in their Schedules and Statement of Financial Affairs, and any amendments thereto.  Debtors further failed to provide sufficient notice of this bankruptcy proceeding to their creditors due to this omission.

**EXHIBIT "1"**

E.      Debtors owe their creditors in excess of $2,750,000.00 and therefore, pursuant to

11 U.S.C. § 109(e), are not eligible for relief under chapter 13 of this title.

**THEREFORE, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the

above-styled and numbered case be and hereby is converted from Chapter 13 to Chapter 7; it is

further

**ORDERED** that any funds on hand with the Chapter 13 Trustee, Carey D. Ebert, shall be

held until such further order of this Court.

Signed on 10/31/2023

*Brenda T. Rhoades*                SD

HONORABLE BRENDA T. RHOADES,
CHIEF UNITED STATES BANKRUPTCY JUDGE

Submitted by:
Joyce W. Lindauer
State Bar No. 21555700
Joyce W. Lindauer Attorney, PLLC
1412 Main Street, Suite 500
Dallas, Texas 75202
Telephone: (972) 503-4033
Attorneys for Jaiesh Narsian, Seshu
Madabushi, Rahul Athale, Prashant Jadhav,
Harpreet Singh, Prabha Singh, Jujaar Singh,
Terry Parvaga, Jasbir Kaur Parvaga and
Dipak Pravin

# Dallas Housing Authority



3939 N. Hampton Rd ., Dallas, TX 75212. Phone: 214.951.8300 Fax: 214.951.88001 www.dhadal.com

December 05, 2019

**DALLAS CREATIVE REMODELERS**
9221 Amberton PKWY #171
Dallas TX-75243.

Hello Mr. Sidhartha Mukherjee,

We refer to the BID (IFB-2019-12) submitted by your company for
REMOVAL AND REPLACEMENT OF 668 nos. VINYL WINDOWS
AT LAKELAND MANOR, 3105 PEAVY ROAD, DALLAS, TEXAS 75228.

We are pleased to inform you that the DHA has, after prudent consideration of your BID, decided to award the Contract to your company. The followings are the General Terms of the Bid

PRICE : $776,886.00
PERIOD : 5 Months
PAYMENT : Will be made in 4 Parts on submission & certification of Invoice
SECURITY : 10% of the Bid Value (5% paid with Bid submission & 5% payable on Bid execution)

Please contact the undersigned on or before December 12, 2019  to sign the Agreement & schedule the work.

**Marvin S. Suttice**
Contract Specialist
Procurement Department

# EXHIBIT "2"

DHA is a Fair Housing and Equal Opportunity Agency
Individuals with disabilities may contact the 504/ADA Administrator at 214.951.8348,
TTY 1.800.735.2989 or 504ADA@dhadal.com

# ⌂ Dallas Housing Authority



EQUAL HOUSING
OPPORTUNITY

3939 N. Hampton Rd ., Dallas, TX 75212. Phone: 214.951.8300 Fax: 214.951.88001 www.dhadal.com

December 17, 2019

**DALLAS CREATIVE REMODELERS**
9221 Amberton PKWY #171
Dallas TX-75243.

Hello Mr. Sidhartha Mukherjee,

We refer to your Intent Letter submitted by your company for carrying out
REMOVAL AND REPLACEMENT OF DWELLING UNIT VCT Flooring
AT ROSELAND ESTATES, 3335 Munger, Dallas, Texas 75204 (Project # IFB-2019-32) offering the
same rate of $6.66 per Sqft as per your concluded Project at FOREST GREEN & BUCKEY
COMMONS dwelling Units

We are pleased to inform you that the DHA has, after prudent consideration of your OFFER, decided to
award the Contract to your company. The followings are the General Terms of the Bid

PRICE : $985,680.00
PERIOD : 6 Months
PAYMENT : Every 45 days totaling to 4 payments of 25% each
SECURITY : 10% of the Project Value (payable on execution)

Please contact the undersigned on or before December 23, 2019 to sign the Agreement & schedule the
work to be commenced from January, 2020.

**Marvin S. Suttice**
Contract Specialist
Procurement Department

DHA is a Fair Housing and Equal Opportunity Agency
Individuals with disabilities may contact the 504/ADA Administrator at 214.951.8348,
TTY 1.800.735.2989 or 504ADA@dhadal.com

## INVESTMENT CONTRACT

This Investment Contract (the "Contract" or "Agreement") is made as of February 18, 2020 (the "Effective Date") by and

*BETWEEN*

**Jujaar Singh**, Address _3049 Stonington Drive Roseville CA 95742_

*AND*

**Dallas Creative Remodelers** located at 3905 Kite Meadow Drive, Plano TX-75074 & represented by Sidhartha Mukherjee & Harpreet Singh

**Dallas Creative Remodelers** has obtained Contract for providing various construction services to various Government Organizations & desires to invite investment from **Jujaar Singh** in order to start execution of the said construction jobs.

THEREFORE, in consideration of the mutual promises set forth below, the Parties agree as follows:

**DESCRIPTION OF TRANSACTION**

Jujaar Singh will invest $ _100,000_ (USD _____) with **Dallas Creative Remodelers** as on February _02-22_ 2020 in the Bank account of **Dallas Creative Remodelers** for a period of 4 months. **Dallas Creative Remodelers** will use these funds towards execution of various Construction jobs mentioned above. After completion of 4 months **Dallas Creative Remodelers** will return the Investment of $ _100,000_ (USD _____) to **Jujaar Singh**. **Dallas Creative Remodelers** will also pay a Return on Investment @15% on the principal amount of $ _100,000_ to **Jujaar Singh**. All transaction will be done through Bank.

*INVESTOR:* **JUJAAR SINGH**

By: _____ Date : _02-22-2020_

*CONTRACTOR:* **Dallas Creative Remodelers**

**SIDHARTHA MUKHERJEE** Representative

By: _____ Date : _02-22-2020_

**HARPREET SINGH** Representative

By: _____ Date : _02-22-2020_

**EXHIBIT "3"**

# Dallas Housing Authority



EQUAL HOUSING
OPPORTUNITY

3939 N. Hampton Rd ., Dallas, TX 75212. Phone: 214.951.8300 Fax: 214.951.88001 www.dhadal.com

March 31, 2022

**DALLAS CREATIVE REMODELERS**
3905 Kite Meadow Drive
Plano TX-75074

Hello Mr. Sidhartha Mukherjee,

We refer to your Bid submitted by your company for carrying out
REMOVAL AND REPLACEMENT OF DWELLING UNIT VCT Flooring
AT ROSELAND ESTATES, 3335 Munger, Dallas, Texas 75204 (Project # IFB-2022-32)

We are pleased to inform you that the DHA has, after prudent consideration of your Bid, decided to
award the Contract to your company. The followings are the General Terms of the Bid

PRICE : $962,889.00
PERIOD : 20 Weeks
PAYMENT : Every 45 days totaling to 4 payments of 25% each
SECURITY : 10% of the Project Value (payable on execution)

Please contact the undersigned on or before April 11, 2022 to sign the Agreement & schedule the
work.

**Marvin S. Suttice**
Contract Specialist
Procurement Department

# EXHIBIT "4"

DHA is a Fair Housing and Equal Opportunity Agency
Individuals with disabilities may contact the 504/ADA Administrator at 214.951.8348,
TTY 1.800.735.2989 or 504ADA@dhadal.com

## INVESTMENT CONTRACT

This Investment Contract (the "Contract" or "Agreement") is made as of April 07, 2022 (the "Effective Date") by and

*BETWEEN*

**Sharad Patel**, 843 Mullrany Drive, Coppell TX 75019

*AND*

**Dallas Creative Remodelers** located at 3905 Kite Meadow Drive, Plano TX-75074 represented by Sidhartha Mukherjee

**Dallas Creative Remodelers** has obtained Contract for providing various construction services to various Government Organizations & desires to invite investment from **Sharad Patel** in order to start execution of the said construction jobs.

THEREFORE, in consideration of the mutual promises set forth below, the Parties agree as follows:

**DESCRIPTION OF TRANSACTION**
**Sharad Patel** will invest **$30,000** (USD Thirty Thousand) with **Dallas Creative Remodelers** as on April 07, 2022 in the Bank account of **Dallas Creative Remodelers** for a period of 3 months. **Dallas Creative Remodelers** will use these funds towards execution of various Construction jobs mentioned above. After completion of 3 months **Dallas Creative Remodelers** will return the Investment of **$30,000** (USD Thirty Thousand) to **Sharad Patel. Dallas Creative Remodelers** will also pay a fixed Return on Investment @12% on the principal amount of $30,000 to **Sharad Patel**. All the transaction will be done through Bank.

*INVESTOR:* **Sharad Patel**

By: _____    Date : 4/7/2022

*CONTRACTOR:* **Dallas Creative Remodelers**

SIDHARTHA MUKHERJEE Authorized signatory

By: _____    Date: 04/07 2022

**EXHIBIT "5"**

Authentisign ID: 5F843...CE1A...

 

3939 N. Hampton Rd ., Dallas, TX 75212. Phone: 214.951.8300 Fax: 214.951.88001 www.dhadal.com

October 21, 2022

**DALLAS CREATIVE REMODELERS**
3905 Kite Meadow Drive
Plano TX-75074.

Hello Mr. Sidhartha Mukherjee,

We refer to your Intent Letter submitted by your company for carrying out
REMOVAL AND REPLACEMENT OF DWELLING UNIT VCT Flooring
AT ROSELAND ESTATES, 3335 Munger, Dallas, Texas 75204 (Project # IFB-2022-32) offering the
same rate of $6.66 per Sqft as per your concluded Project at FOREST GREEN dwelling Units

We are pleased to inform you that the DHA has, after prudent consideration of your OFFER, decided
to award the Contract to your company. The followings are the General Terms of the Bid

PRICE : $985,680.00
PERIOD : 20 Weeks
PAYMENT : 4 payments of 25% each
SECURITY : 10% of the Project Value (payable on execution)

Please contact the undersigned on or before October 31, 2022 to sign the Agreement & schedule the
work to be commenced from November, 2022.

**Marvin S. Suttice**
Contract Specialist
Procurement Department

# EXHIBIT "6"

DHA is a Fair Housing and Equal Opportunity Agency
Individuals with disabilities may contact the 504/ADA Administrator at 214.951.8348,
TTY 1.800.735.2989 or 504ADA@dhadal.com

Authentisign ID: 5F843... ...CE1A...

# EXHIBIT "7"

## <u>INVESTMENT CONTRACT</u>

This Investment Contract (the "Contract" or "Agreement") is made as of date **November 09, 2022** (the "Effective Date") by and

*BETWEEN*

**JPRS LLC,** 8544 Rugby Drive, Irving TX-75063 represented by Jaiesh Narsian

*AND*

**Dallas Creative Remodelers** located at 3905 Kite Meadow Drive, Plano TX-75074 & represented by Sidhartha Mukherjee

**Dallas Creative Remodelers** has obtained Contract for providing various construction services to various Government Organizations & desires to invite investment from **JPRS LLC** in order to start execution of the said construction jobs of VCT Flooring at Roseland Manor Building as per the contract #IFB-2022-32 listed in Appendix A

THEREFORE, in consideration of the mutual promises set forth below, the Parties agree as follows:

### DESCRIPTION OF TRANSACTION

**JPRS LLC** will invest 128,400.00 (USD one Hundred twenty-eight thousand four hundred) with **Dallas Creative Remodelers** as on November 09, 2022 in the Bank account of **Sri Laxmi Global Investment** a sister concern of **Dallas Creative Remodelers** for a period of 5 months. **Dallas Creative Remodelers** will use these funds towards execution of the 1st phase of the VCT Flooring job mentioned above. **Dallas Creative Remodelers** will provide regular updates about the progress of the project including project progress, disbursals from DHA to the Company as well as the project deadlines status. After completion of 5 months that is 04/21/2023 **Dallas Creative Remodelers** will return the Investment of **$128,400.00** (USD one Hundred twenty-eight thousand four hundred) to **JPRS LLC** though it's sister concern **Sri Laxmi Global Investment. Dallas Creative Remodelers** will also pay 40% of the projected margin at a minimum of **$98,400** to **JPRS LLC** totaling to **$226,800.00**. All the transaction will be done through Bank.

THIS CONTRACT IS A FINANCIAL CONTRACT ONLY BETWEEN THE INVESTOR AND THE COMPANY. THE COMPANY AGREES THAT THE INVESTOR IS NOT LEGALLY LIABLE FOR ANY OF THE CONTRACT WORK THAT THE COMPANY IS EXECUTING WITH THE INVESTMENT RAISED THROUGH THIS CONTRACT. THE COMPANY AGREES THE INVESTOR SHALL NOT BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL, RELIANCE, PUNITIVE OR SPECIAL DAMAGES, INCLUDING LIMITATION DAMAGES FOR HARM TO BUSINESS, LOST PROFITS, LOST SAVINGS OR LOST REVENUES, WHETHER OR NOT SUCH PARTY HAS BEEN ADVISED OF THE

Authentisign ID: 5F843A...CE1A...

POSSIBILITY OF SUCH DAMAGES. THE TOTAL AGGREGATE LIABILITY OF THE
INVESTOR, DIRECTORS, OFFICERS, AND OR EMPLOYEES UNDER OR IN CONNECTION
WITH THIS AGREEMENT WILL, IN ALL CIRCUMSTANCES, BE LIMITED TO THE
INITIAL INVESTMENT ONLY

*INVESTOR:* **JPRS LLC.**

By: _Jaiesh Narsian_    11/10/2022    Date: _11/09/2022_
11/10/2022 3:38:34 PM CST

*CONTRACTOR:* **Dallas Creative Remodelers**

By: _Sidhartha Mukherjee_    Date: _11/09/2022_

**Appendix A:** Offer Letter from DHA attached

**Appendix B:** Cost Sheet for the Project attached

 

**Dallas Housing Authority**

3939 N. Hampton Rd ., Dallas, TX 75212. Phone: 214.951.8300 Fax: 214.951.88001 www.dhadal.com

October 21, 2022

**DALLAS CREATIVE REMODELERS**
3905 Kite Meadow Drive
Plano TX-75074.

Hello Mr. Sidhartha Mukherjee,

We refer to your Intent Letter submitted by your company for carrying out
REMOVAL AND REPLACEMENT OF DWELLING UNIT VCT Flooring
AT ROSELAND ESTATES, 3335 Munger, Dallas, Texas 75204 (Project # IFB-2022-32) offering the
same rate of $6.66 per Sqft as per your concluded Project at FOREST GREEN dwelling Units

We are pleased to inform you that the DHA has, after prudent consideration of your OFFER, decided
to award the Contract to your company. The followings are the General Terms of the Bid

PRICE : $985,680.00
PERIOD : 20 Weeks
PAYMENT : 4 payments of 25% each
SECURITY : 10% of the Project Value (payable on execution)

Please contact the undersigned on or before October 31, 2022 to sign the Agreement & schedule the
work to be commenced from November, 2022.

**Marvin S. Suttice**
Contract Specialist
Procurement Department

DHA is a Fair Housing and Equal Opportunity Agency
Individuals with disabilities may contact the 504/ADA Administrator at 214.951.8348,
TTY 1.800.735.2989 or 504ADA@dhadal.com

## COST SHEET
**ROSEL AND ESTATES,** 3335 Munger, Dallas, Texas 75204 (Project# IFB-2019-32)

| VCT FLOORING | LENGTH | WIDTH | NOS | AREA SFT | 4" PVC TRIM RFT |
|---|---|---|---|---|---|
| LUNDRY | 17.00 | 10.25 | 25.00 | 4356.25 | 681.25 |
| | 9.25 | 7.00 | 25.00 | 1618.75 | 406.25 |
| HALL WAY | 20.00 | 35.00 | 19.00 | 13300.00 | 1045.00 |
| | 61.00 | 33.00 | 19.00 | 38247.00 | 1786.00 |
| | 35.00 | 22.00 | 19.00 | 14630.00 | 1083.00 |
| REST ROOM ENTRY | 12.00 | 5.00 | 25.00 | 1500.00 | 425.00 |
| Phase III | 31.00 | 8.00 | 16.00 | 3968.00 | 624.00 |
| | 13.00 | 4.00 | 16.00 | 832.00 | 272.00 |
| Phase II | 37.00 | 5.50 | 24.00 | 4884.00 | 1020.00 |
| | 101.00 | 5.50 | 24.00 | 13332.00 | 2556.00 |
| | 20.00 | 13.00 | 24.00 | 6240.00 | 792.00 |
| | 5.00 | 5.00 | 24.00 | 600.00 | 240.00 |
| | 3.50 | 6.50 | 24.00 | 546.00 | 240.00 |
| Phase I | 37.00 | 5.50 | 30.00 | 6105.00 | 1275.00 |
| | 101.00 | 5.50 | 30.00 | 16665.00 | 3195.00 |
| | 20.00 | 13.00 | 30.00 | 7800.00 | 990.00 |
| | 5.00 | 5.00 | 30.00 | 750.00 | 300.00 |
| | 3.50 | 6.50 | 30.00 | 682.50 | 300.00 |
| LIFT CAGE | 7.00 | 4.25 | 12.00 | 357.00 | 135.00 |
| STARCASE LANDING | 8.00 | 4.00 | 145.00 | 4640.00 | 1740.00 |
| B -BUILDING GR. FLOOR | 21.00 | 4.00 | 27.00 | 2268.00 | 675.00 |

|  |  | AREA SFT | 4" PVC TRIM RFT |
|---|---|---|---|
| | | 143321.50 | 19780.50 |
| Add 4% wastage | | 5732.86 | 791.22 |
| | | 149054.36 | 20571.72 |

| 1 box=22 tiles=44 sft | (6x48)" | 1 roll = 60 rft |
|---|---|---|
| 3388 boxes = 149072 sft | | 343 rolls =20580 rft |

| 1 box | 76.45 | | 1roll | 72.35 |
|---|---|---|---|---|
| 15% disc | 11.47 | | 15% disc | 10.85 |
| 1 box net | 64.98 | | 1 box net | 61.50 |
| 3388 box | 220160.71 | | 129 rolls | 7933.18 |

| 228094 | Material (Armstrong VCT & Trim) | |
|---|---|---|
| 68000 | Accessories (Adhesive & Leveling Compound) | |
| 378000 | LABOR Charges | |
| 42000 | Supervision Cost | |
| 24320 | Dumpster Rentals, Food, Transport | |
| 740414 | Total projected **COST** | |